LULU RICHARDSON, Appellant, v. AUGUST REPS.

**Slander:** WORDS ACTIONABLE *per se:* QUESTION OF FACT. In an action for slander the question of whether the words spoken of plaintiff were actionable *per se* was, under the evidence, one of fact for the jury.

**Same:** PRIVILEGE. The question of whether an alleged slanderous communication is within the privilege which the law affords is primarily for the jury.

*Appeal from Cedar Rapids Superior Court.*— HON. J. H. ROTHROCK, Judge.

WEDNESDAY, JULY 3, 1907.

REHEARING DENIED MONDAY, DECEMBER 16, 1907.

ACTION to recover damages for slander. There was a general denial and an allegation of facts tending to show privilege. At the close of the evidence for plaintiff the court sustained defendant's motion to direct a verdict in his behalf, and from a judgment on this directed verdict the plaintiff appeals.— *Reversed.*

*Main & Griffiths,* for appellant.

*Jamison & Smythe,* for appellee.

McCLAIN, J.— The grounds of the motion for a directed verdict so far as it is necessary to consider them were, first, that the words spoken were not actionable *per se,* and there was no allegation of special damages; and, second, that the communication complained of was conclusively shown to be privileged. The testimony for plaintiff on which the verdict was directed tended to show that plaintiff entered defendant's store for the purpose of trading, and, having

made some purchases, tendered to defendant's clerk certain silver coins which were returned to her by the clerk in the defendant's presence as counterfeit money. Plaintiff protested that the coins were not counterfeit, explaining the sources from which they had come, and defendant replied, "I cannot help that; it is counterfeit money." Plaintiff still persisted that the coins were not counterfeit, and attempted to make payment with smaller coins which the clerk brought back with the statement, "This is all counterfeit money, too," alleging that it did not come up to the standard weight. Thereupon plaintiff gave back the goods which she had purchased, and accepted the money which she had given to the clerk, and, as she went out of his store, the defendant said to her, "Well, Mrs. Richardson, you cannot expect me to take counterfeit money in exchange for my goods," in response to which plaintiff further protested that the money was not counterfeit. This conversation was carried on in the presence of the plaintiff's child and a clerk in defendant's store. Plaintiff thereupon went to another store, and with one of the coins which she had tendered to defendant's clerk made a small purchase. Then, having visited a bank for the purpose of having her money examined, she returned to defendant's store, and told him that the bank had tested the money and pronounced it to be good. His response was, "All right, all right," and he turned away, and would not listen to any further explanation. Plaintiff then went to another store, where she made small purchases, paying for them with the coins which defendant had refused, and, while she was at the counter, examining other goods, a policeman, in his uniform, accosted her, and asked her whether she was the woman who was trying to pass counterfeit money; and on her denial he stayed by her until an employé in the store went to the bank with the coins which she had already paid for purchases in the same store and ascertained that they were not counterfeit. Thereupon the policeman assured plaintiff that "It is all right." It further appears that the

policeman had been caused to seek out the plaintiff by reason of a communication sent from defendant's place of business to the police headquarters, to the effect that some one had just been in his store who had some money that he did not like the looks of and that he thought was bad. Thereupon the deputy city marshal and the policeman already referred to called at defendant's place of business, received from him a description of the plaintiff, and went to hunt her up. It does not clearly appear from the evidence for the plaintiff whether the personal communication made by defendant at his store to the assistant marshal and policeman was prior or subsequent to the time when plaintiff had returned to defendant's store, and advised him that the bank pronounced the money to be good. But we think the jury would have been justified in finding that this communication was made by defendant after plaintiff had thus returned.

I. As to the claim that the words spoken by the defendant of the plaintiff were not actionable *per se,* the only contention for appellant is that they tended to convey to

1. SLANDER: words actionable *per se:* question of fact.

those hearing them the imputation of the crime of passing, or having in possession with intent to pass, counterfeit money, knowing the same to be counterfeit. What was said by defendant to plaintiff when her money was returned to her on the occasion of her first visit to his store did not, perhaps, impute to her any crime, although her child testified that she understood defendant to mean that " Mamma was doing something she ought not to do." But, when defendant called in the police and advised them that plaintiff, describing her, had money that he thought was bad, and did so with the knowledge that the officers were taking the description for the purpose of hunting her up, he certainly used language which the jury might have found, under the circumstances, to impute to plaintiff a criminal purpose. The officers certainly so understood it, for they would not have been justified in pursuing the plaintiff and virtually holding her in

detention if their understanding of the language had been simply that by mistake and without any wrongful purpose she had tendered counterfeit money to the defendant. And the consequence of this language on the part of the defendant to the officers was that they practically put her under arrest in a public place, using towards her language which, under the circumstances, must have been understood by those present to impute a crime. The jury would have been justified in finding, therefore, that language was used by the defendant and by the officers acting at his suggestion and as a natural consequence of his communication to them which did impute to plaintiff the crime of passing or attempting to pass counterfeit money. So far as the question is involved, whether the words spoken by the defendant to the officers and by the officers, through defendant's procurement, to the plaintiff in the presence of others imputed a crime, we reach the conclusion that it was for the jury to say whether the words spoken were actionable *per se*.

II.   With reference to the question of privilege, the sufficiency of the evidence depends upon the determination of fact whether the communication to the officers was made

2. SAME: privilege. by defendant after plaintiff had returned to defendant's store and advised him that she had found on inquiry at the bank that the money which she had previously tendered in his store and taken back was genuine. This communication to the officers came within the scope of a qualified privilege. If it was made with reasonable grounds of belief that it was true, and without malice, then defendant should not be held liable. If, on the other hand, it was made recklessly, with reason to believe that it was not true — *i. e.*, not true in the broad sense that it imputed a crime — then defendant would be liable. The question whether such a communication comes within the scope of the privilege which the law gives in such cases was primarily for the jury. *Morse v. Times-Republican Printing Co.*, 124 Iowa, 707, 721. If this communication was

made to the officers after plaintiff had advised defendant that her money was pronounced good at the bank, then certainly it was for the jury to say whether the defendant had reasonable grounds to believe and was acting in good faith in imputing to her a crime.

We think the court erred in directing a verdict for the defendant, and the judgment is *reversed*.