GRINNELL BRICK & TILE COMPANY, Appellant, v. H. R. BOOK-NAU, Appellee.

**New trial by petition:** GROUNDS. Error of law occurring upon the
1 trial of a cause, and a claim that the verdict is not sustained by a preponderance of the evidence, are not matters which can be raised in a petition for a new trial.

**Same:** NEWLY DISCOVERED EVIDENCE. Where a witness testified upon
2 the original trial of a cause, a strong showing must be made to justify the granting of a new trial on the ground of newly discovered evidence which the same witness will give. The evidence of a witness in support of a petition for a new trial in this proceeding is held not so materially different as to authorize a retrial.

**Same:** GROUNDS FOR NEW TRIAL. A new trial will not be granted because
3 a witness previously examined has changed his mind and wishes to explain some matters appearing in his testimony, or because he may have been induced to change his testimony in some particulars, or where the proposed newly discovered evidence is merely cumulative, or to some extent impeaching.

*Appeal from Grinnell Superior Court.*—HON. P. G. NORRIS, Judge.

THURSDAY, NOVEMBER 5, 1914.

APPEAL from an order denying a petition for a new trial. Plaintiff appeals.—*Affirmed.*

*Bray, Shifflett & Lake,* for appellant.

*J. H. Patton,* for appellee.

PRESTON, J.—Plaintiff sold to defendant about $1,550 worth of tile, and sued to recover a balance of $402.64, alleged to have been due on the account. Defendant, by way of answer and counterclaim, alleged, in substance, that under the agreement the tile was to be of good quality and delivered at Newburg in good condition; alleges that many of the tile were broken and were defective; that he was unable to state the nature of the defect, but says they were rotten, and they crumbled and were broken in ordinary handling; that he paid freight and was otherwise damaged. He asked damages on his counterclaim in the sum of $1,007.19. Plaintiff denied it was to pay freight, and denied liability because of breakage, etc. On the issues raised in the original hearing, a trial was had to a jury, resulting in a verdict and judgment for defendant for $200. This was on June 15, 1912. Plaintiff filed a motion for new trial, which was overruled June 24, 1912. February 13, 1913, plaintiff filed its petition for new trial, and the matter is being now reviewed. To the petition a motion for more specific statement was made and sustained in part, then plaintiff amended the petition, and defendant demurred. Plaintiff again amended its petition and attached an affidavit of Houvenagle as Exhibit A. Defendant again demurred, attaching an affidavit to his demurrer. There appears to have been no ruling on the demurrers. No answer was filed, none being required under section 4095 of the Code. Evidence was introduced by both parties on this hearing, and plaintiff filed still another amendment to the petition to meet the proof.

The procedure was somewhat irregular, and is conceded to be so by one of the parties, but no objection is made as to this. Sixteen pages of the abstract are taken up in the printing of the pleadings in this application for a new trial. The

evidence on the original trial is not all set out in the abstract; some of it is. The arguments here are somewhat confusing because the discussion is, to some extent, as though the first trial was being now heard, or that the case was being now retried. It is not, of course, a retrial now, but an application to determine whether or not there shall be a new trial.

It is difficult to treat the questions presented without going somewhat into detail and without some repetition, because it involves the stating of facts in three different ways; that is, to state the substance of what is set out in the application for a new trial as the alleged newly discovered evidence, and to compare that with the evidence given on the first trial, and with the testimony of the witness at the present hearing. The substance of the errors relied upon is that the court erred in holding that the perjury of a party to the action is not sufficient ground to justify granting a new trial, and in holding that the evidence was not newly discovered, and that reasonable diligence was not shown.

Appellee's points for affirmance are substantially that the evidence is not newly discovered; that plaintiff is simply asking for another opportunity to canvass the same evidence adduced on the original trial; that the so-called newly discovered evidence is cumulative and impeaching, and such as might be met by other and opposite cumulative evidence on the part of defendant; no diligence is shown; that the trial court did not abuse its discretion; and that it does not appear that the alleged newly discovered evidence will change the result.

The grounds relied upon in the petition for new trial, condensed as much as we are able to do, are, substantially, that there were errors of law occurring at the trial, excepted to by the party making the application. But it occurs to us the remedy as to this would be by appeal to a higher court. Another ground is that the verdict is not sustained by the preponderance of evidence. We do not understand this to be a ground for new

1. NEW TRIAL BY PETITION: grounds.

trial by petition. Another ground is that the verdict is contrary to law, as shown by Exhibit A, Exhibit A being the affidavit attached to the petition and before referred to. Other grounds are that fraud was practiced by the defendant in obtaining the judgment, and that there was irregularity in obtaining the judgment, as will more fully appear by reference to paragraphs 1, 2 and 5.

Though not cited by counsel, we assume that the petition was filed under Code, sections 4094, 4095, or 4092 and 3756. Section 4094 provides that the facts or errors must be set forth in the petition. The allegation is that plaintiff will show these matters by the evidence of Louis Houvenagle and others. The others were not named in the petition. Other witnesses were examined, but we take it plaintiff relied on the evidence of Houvenagle, because this is the matter set forth in the petition.

Paragraphs 1, 2 and 5, just referred to, are as follows:

1. That there was misconduct of prevailing party (the defendant) in this that:

(a) He testified falsely; that the tile crumbled; that three tile crumbled in one place dug down to; that the earth had a boiled appearance, and that this appearance did not obtain because of surface water draining into these low places; that the tile crumbled into five pieces; that the tile was not fit to use; that he discovered this boiled appearance within one week or ten days, later testified he discovered the tile unfit on October 6th, at another time, testified he knew it long before, at another in September; that he had a level properly run; that there was broken tile because of settle in line where ditch was filled; as to the reason given by Houvenagle for refusing to lay tile, that Louis Houvenagle took load of tile out of road; that he saw all tile go in, and that they were good when put in; that Louis Houvenagle did not put in any cracked or broken tile; that he dug in places and found crumbled tile; that tile was laid through a barrel, when he. knew these things so testified were false and untrue, and this was done by the said defendant for the purpose of obtaining a result contrary to right; and plaintiff alleges that the things so testified to were matters material to the issues herein, and that their

falsity was not known to the plaintiff before judgment and could not have been known by it before judgment.

(b) That he (said defendant) procured false testimony to be given upon the trial of this cause, and that the false testimony so procured aforesaid was material to the issues.

2. That there was surprise which ordinary prudence could not have guarded against in this: That the defendant testified falsely as above; that he procured his only witness to testify falsely as set out in Exhibit A, hereto attached and by reference made a part hereof.

5. That there is newly discovered evidence material for the plaintiff, which it could not, with reasonable diligence, have discovered and produced at the trial, in this: That the tile were put in at improper grade; that but few tile were broken because of inherent weakness; that most breakage was because of rough handling by defendant and his men; that the broken tile in the ditch were broken by the application of force; that defendant testified falsely upon material things in issue; that defendant's witness, Louis Houvenagle, testified falsely upon material things in issue; that the false testimony of Louis Houvenagle was obtained by virtue of threats and promises of the defendant, and with defendant's knowledge of its falsity; that the tile in the ditches were good, merchantable tile; that plaintiff exercised due diligence to learn the material facts set out above before the trial, but was unable because of the active fraud of the defendant, the further fact that the information was within his [the defendant's] breast and the breast of one peculiarly under his control, and further because the *res* was *in toto* under his control, being seven feet under the ground and on his farm.

These are the real grounds upon which the new trial is asked.

The witness Houvenagle testified at length as a witness on the last hearing. It should be mentioned here that both Houvenagle and defendant Booknau testified as witnesses at the original trial, and on the same subjects.

2. SAME: newly discovered evidence.

We regard this as important. It has been held that the case must be a very strong one which will justify a new trial on the ground of newly discovered evidence, where the witness was in fact used upon the

trial of the case. *Marengo Savings Bank v. Kent,* 135 Iowa, 386.

Other witnesses also testified for both plaintiff and defendant on the same matters. On the original trial the jury was required to weigh the evidence of the different witnesses and to determine which of them were truthful or untruthful. On the main trial Houvenagle testified:

I lived at Newburg; have laid considerable tile the last two falls, probably 1,300 or 1,400 rods. I hauled and laid tile for the defendant in the fall of 1911. Six hundred and seventy-two large tile were broken in the car which the engine struck at Newburg. The tile was hauled from Newburg on a wagon with hayracks. Ten to fifteen tile to the load on an average were broken in the hauling; they were carefully handled, and the cause was the fault of the tile; they seemed to be checked and cracked, no such tile as the exhibits. Probably twenty-five per cent. or thirty per cent. fell to pieces in handling. I would say the tile were not properly mixed or burned. I laid the tile when the ditch was ready. No broken tile was put in the ditch and covered up. Water was running in the ditch at that time. After the tile was laid in the ditch I observed running water at the outlet. It was running toward the creek. I was down the last of April at the time of the rain, and I noticed the tile was not running. I went over the whole string of the one hundred and fifty-eight rods and found that some one had opened the ditch with a spade and had tested it, the tile were broken in little pieces. Five places had been dug down tò, and I found the same condition in each; there seemed to be one or two places where the tile hadn't crumbled but was broken. There was no water at the outlet of the 48-rod ditch. Q. What was the condition of the tile that you uncovered when you dug down to it in the 48-rod string? A. The tile was broken. It had the appearance of being crumbled. There are about two hundred and forty rods of twelve-inch tile on the Rock Creek farm. There are three hundred and thirty-six or five hundred and thirty-six twelve-inch tile on the surface of the ground at the Rock Creek farm, two hundred and fifty at Newburg and twenty-five at the Newburg farm. I think eight car loads of twelve-inch tile were delivered to the defendant, or about 8,000. Six hundred and seventy-two of 1,000 were broken when they arrived at

Newburg.  I didn't examine particularly the tile not put in
the ground, but I noticed there were a great many broken.
Several twelve-inch tile were broken when a side of the rack
fell off and let the tile out.

Cross-examination:

When the car was bumped four hundred tile were broken.
In hauling tile I often drove one team and led another.  There
are seven hundred and thirty-five tile on the Rock Creek farm
piled up now.  Cattle are running in there.  In the ditch
examined the tile has crumbled, fallen to little pieces, slacked.
I have seen seven broken tile in the ditch.  Five of them were
in the hundred and fifty-eight-rod; they are in five places,
just one tile in a place, the other two are in the forty-eight-rod
ditch, in two places.  One tile in a place was all I ever looked
for.  My only reason for saying the tile are not good is because
they broke in hauling.  We filled the ditch by scraping the
dirt in with a team.  I broke a good many tile, fifteen or
twenty every hundred and fifty rods.  All of the tile broke
that fell off the wagon on the roadside.  I didn't expect them
not to break.  The sixty-rod ditch had all Grinnell tile.  I
found water in the hundred and fifty-eight-rod ditch at all
the places where we dug.

We shall not set out at length his testimony on the hear-
ing of the present petition for new trial.  It is enough to say,
that it is much the same, with possibly some explanations and
additions.  He also qualifies and explains
some of the statements in his affidavit which
was prepared by counsel for appellant, using their own form
of expression possibly without being able to convey the exact
meaning of the witness.  A retrial ought not to be had merely
because a witness has changed his mind as to some matters,
or desires to explain, or possibly has been persuaded or
induced to state his evidence somewhat indifferently.  We
shall refer to some of his evidence on this last trial:

3. SAME: grounds
for new trial.

Mr. Booknau did not, at any time prior to the trial of
this case in June, or during the trial, ask me to give false
testimony in his behalf, and I did not give any testimony as a

witness on the trial at the instance or request of the defendant which was false, nor did his attorney suggest or request that I do so. Before the trial in June I went with Mr. Booknau and examined certain places that had been dug down to by some one else before I got there. I got down into that hole and dug some distance with my hand. When the question was propounded to me in the former trial, asking me to describe the condition of the tile at the place I dug down to, I understood the question as meaning the digging down with my hand. In giving the description of the tile at the different places in my testimony on the trial I stated the facts just as they were when I made the examination. In laying the tile, when we had a good tile with a chunk broken out, we would place a piece over it. The patches were larger than the holes. I went over the different strings of tile in a general way before the trial in June just to examine those broken places. I asked Mr. Booknau, in a conversation I had with him when examining those places that had been dug down to; if the entire tile was in the same condition as what I had in my hand, and when he said I would be perfectly safe in saying that was their condition, I understood him to refer to the tile where they were dug out in one place, and not as referring to all the tile in the ditch. I didn't mean that Booknau said that the entire hundred and fifty-eight rods was in that condition. I understood he was referring to the tile that had been examined. I meant by saying the whole tile, that one tile was broken to pieces, the whole, entire tile was broken to pieces, but not all the tile in the ditch. When I went out to re-examine these ditches after the trial I took my shovel and opened the same place I had my hand in. I opened up five places and found broken tile there. I didn't uncover any more tile than had been uncovered before. I can't remember, but I possibly did break some tile when putting my foot on them to get them down. I did not break any tile, and leave it in the ditch, but took it all out. Q. You are not prepared to say that Mr. Booknau testified to anything on the trial of this case last June which was not true, are you? A. What was said on the witness stand by both; that we both said that the entire tile were broken. I mean to say that as far as I know this evidence was good, with the exception his saying to me that I was perfectly safe in saying the entire tile were broken. That referred to the tile at the bottom of the hole and no other place. As I remember, I said there were 1,300 or 1,400.

Other similar testimony is given which is in the nature of an explanation of his former testimony. But it is far from constituting perjury on his part at the original trial, or as indicating perjury on the part of the defendant. Plaintiff has the burden, and without a further discussion of the record, which has been examined with care, we conclude that plaintiff has not shown sufficient grounds for reopening the case. The alleged new evidence is, at most, but cumulative, and perhaps to some extent impeaching. We may add that no sufficient reason is shown why the so-called new evidence could not have been procured before the trial as well as after. It is true the tile was laid upon the defendant's farm and was under his control, but the witness Houvenagle, by whom plaintiff expects to show the new facts, is the person who laid the tile, or assisted in laying them, and testified on the original trial to facts as observed by him.

It does not appear that the trial court abused its discretion in refusing a new trial, or that a different result would be reached on another trial. The judgment is therefore— *Affirmed.*

LADD, C. J., and EVANS and WEAVER, JJ., concur.