D. M. GRAHAM, Appellee, v. JOSEPH OCHSNER, Appellant.

**NEGLIGENCE:** Unguarded Condition of Shaft—Evidence. An allega-
1  tion that an elevator shaft was unguarded may be supported by testimony that it *could* be guarded in a certain manner.

**TRIAL:** Instructions—Copying Concise Pleading. It is not error to
2  copy pleadings into the instructions when they clearly and concisely present the respective claims of the parties.

**NEW TRIAL:** Newly Discovered Evidence—Impeaching Testimony.
3  Newly discovered impeaching testimony will not justify an order for new trial.

*Appeal from Lee District Court.*—JOHN E. CRAIG, Judge.

JUNE 23, 1922.

ACTION to recover damages for personal injuries sustained by reason of defendant's negligence in failing to keep properly guarded in defendant's place of business an entrance to an elevator shaft. Cause tried to a jury resulting in a verdict and judgment for the plaintiff in the sum of $1,500. Defendant appeals.—*Affirmed.*

*Herminghausen & Herminghausen* and *William H. Hartzell,* for appellant.

*E. C. Weber* and *J. M. C. Hamilton,* for appellee.

DE GRAFF, J.—This is an action to recover for personal injuries. The scene of the accident giving rise to the alleged damages was an elevator shaft located in the rear of defendant's garage and opening upon an alleyway. The opening to the elevator shaft was guarded by double doors and when closed barred access thereto from the alley.

The negligence charged by the plaintiff at the time and place of the accident is in three particulars: (1) in permitting the elevator platform to be at the third floor of the building and leaving open the shaft at its entrance from the alley; (2) that there was no light about the elevator shaft; (3) that there was no railing or protection of any kind to prevent persons or pedestrians from falling into the shaft. The defendant denied the allegations of plaintiff's petition and pleaded contributory negligence.

The building in which the elevator was located was used by the defendant-owner in his business of selling Ford cars and accessories, and also as a repair and workshop for automobiles. The freight elevator in question was located in the southwest corner of the building. At the south or alley side of the elevator shaft are two doors, which when closed extend across the entire opening of the shaft. One is a sliding door, "sliding from the east wall snug up to the west wall." It is a heavy door with four panels of plate glass, which extend to within 18 inches of the bottom of the door. The other or outer door is double, and when closed is parallel to the sliding door with about 12 inches of space between them. The double door has a

latch and a hook and wire for fastening. They swing on hinges, and open outward in opposite directions. Above the doors on the outside of the building is an arm extending into the alley 4 or 5 feet on which is an electric light bulb. Beneath this arm is a sign with the word "Garage." The only entrance to the elevator is from the alley. The elevator operates automatically and is used for carrying freight and merchandise.

There is no question that the doors to the shaft when closed form a perfect bar to access to the elevator and shaft. It appears that on December 23rd, 1919 the plaintiff had some difficulty with an automobile truck belonging to his employer the Modern Electric Shop. He was about six blocks west of the defendant's garage. He phoned the garage for help and in response to the call one of the mechanics of the defendant went to plaintiff's aid. He gave first aid, started plaintiff's truck, and after plaintiff unloaded at his own place of business, the truck was driven upon the invitation of the mechanic to defendant's garage. It is the claim of defendant's witness Denning that after he left the plaintiff he (the mechanic) drove directly to the garage, "opened the doors and drove my car right in on the elevator platform and put it away. When I drove my car in on the platform I wired the outside doors and shoved the inside doors shut." It was about 5:30 o'clock in the evening. The night was very dark and cold.

Plaintiff testified that when he arrived at defendant's place of business he sounded his horn several times. "I got out of the car to go into the garage to find someone. The inside door (to the shaft) was partly open. There was no other door or any protection there that I noticed. When I got to the door I moved the door that was partly opened with my hands and stepped over. When I started in before I stepped I looked into the garage. I looked ahead of me. It seemed like it was all one space. There was one light in the office about 20 feet ahead of me. There was no light on the outside entry of the garage."

The evidence is in material conflict as to whether the doors to the elevator shaft were closed and fastened and whether there was a light burning at the entrance above the door. We deem it

unnecessary to further detail or analyze the record. Fact questions were presented, the credibility of the witnesses was involved, and the jury having made its finding on the disputed facts it is not the function of this court without cause to disturb the verdict.

It is contended by appellant that there was error in admitting testimony of plaintiff's witness Schafer "as to the possibility of having a railing in the rear of the elevator shaft opening."

1. NEGLIGENCE: unguarded condition of shaft: evidence. Plaintiff's petition alleged that there was no railing to prevent persons from falling into the shaft. Plaintiff's witness testified that such a bar or railing could have been placed about the shaft. This evidence was given upon his redirect examination. Upon cross-examination Schafer testified: "I am acquainted with freight elevators. There could not be any railing placed around the elevator at the south and be used as a freight elevator in driving cars from the alley to the elevator; not a stationary railing. It is necessary to have the opening for a freight elevator."

Upon the redirect this witness stated that a railing could be placed at the rear end of the opening so as to prevent persons from falling in and that it could be so fixed that it could be taken away when the elevator was at the first floor. There is no basis for the error assigned by appellant in this particular. The evidence is not only within the purview of plaintiff's allegation, but it is explanatory of the evidence elicited by defendant upon the cross-examination of plaintiff's witness. It will be observed that his testimony is not that a railing *should* have been so placed but that it *could* have been so placed.

The instructions of the court were in line with the allegations of plaintiff's claim and items of negligence. The petition itself is not complicated in statement. It is quite brief and easily understood. It is true that this court has

2. TRIAL: instructions: copying concise pleading. heretofore criticised the verbatim copying of pleadings into the instructions, but this criticism has never been made when the pleadings are concise and clearly present the respective claims of the parties to the action. See *Lang v. Marshalltown L. P. & R. Co.*, 166 Iowa 548. See, also, *Swanson v. Allen*, 108 Iowa 419.

Plaintiff was upon the defendant's premises by invitation. He was told to bring his car to the garage. He attempted to find someone to whom the car could be delivered. He was there for an authorized purpose. It was for the jury to say whether the defendant negligently permitted certain conditions as charged to exist and whether those conditions were the proximate cause of the injury. If the elevator shaft doors were open at the time and under the circumstances of this case it clearly imperiled the safety of a person who came upon the premises. The defendant was under a legal obligation to exercise reasonable and ordinary care to see that his place of business could be used with reasonable safety by those who were invited to come thereon, and by others for that matter. *Noyes v. Des Moines Club,* 178 Iowa 815; *Burk v. Walsh,* 118 Iowa 397.

One other point argued by appellant deserves brief mention. It is contended that a new trial should have been granted upon the ground of newly discovered evidence. One of the defendant's witnesses had testified that before the accident he had seen the plaintiff on the elevator with Carl Day an employee of defendant, and that Day quit the service about December 15, 1919. This testimony was offered to prove that the plaintiff had knowledge of the *locus in quo,* and to contradict certain statements made by him as to that knowledge. Upon rebuttal Day testified that he had heard of the accident at the garage but that he was not working there at that time and that he was of the opinion he quit working there about two months before; that during the time he worked there he had not seen the plaintiff in the garage. The defendant was quite deaf and for this reason it is claimed that he did not hear Day's testimony in this particular. After the trial the defendant produced records showing that Day received his last pay check December 6, about two weeks before the accident. This new evidence did not justify the court in granting a new trial. *Henderson v. Edwards,* 191 Iowa 871; *Witt v. Town of Latimer,* 139 Iowa 273; *Grinnell Brick & Tile Co. v. Booknau,* 167 Iowa 279.

3. NEW TRIAL: newly discovered evidence: impeaching testimony.

Upon a careful review of the record we discover no reversible error and the judgment entered is therefore—*Affirmed*.

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.