W. D. KINNEY, Appellant, v. G. W. CADY, Appellee.

No. 45859.

JUNE 16, 1942.

REHEARING DENIED OCTOBER 2, 1942.

Charles W. Barlow and L. R. Boomhower, both of Mason City, and Gibson, Stewart & Garrett, of, Des Moines, for appellant.

L. A. Moe and Senneff & Duncan, of Mason City, for appellee.

HALE, J.—Plaintiff, on October 3, 1940, filed a petition claiming damages of the defendant for wrongfully treating hogs belonging to the plaintiff. To this defendant filed answer and counterclaim. In said counterclaim, as amended, he asked damages against the plaintiff for slanderous statements alleged to have been made by the plaintiff. To this counterclaim plaintiff filed answer, which, as amended, denied generally the allegations of defendant's counterclaim and denied that the plaintiff mentioned, referred to, or spoke of the defendant, directly or indirectly to any of the persons charged. An amendment by plaintiff to his answer to the counterclaim asserted that even if the statements had been made by him they were privileged for the reason that the persons named and referred to by defendant were employees of the plaintiff on farms of the plaintiff at the times stated and that said statements were in connection with the plaintiff's business in which the employees were then engaged. This amendment, on objection of defendant, was refused by the court.

At the close of all the testimony both sides moved for a directed verdict. The motion of plaintiff was overruled and that of defendant sustained. Plaintiff does not appeal from the court's ruling on the motion directing a verdict against him on his petition, but appeals from the action of the court and jury on defendant's counterclaim.

The defendant is a veterinary surgeon living at Mason City. The plaintiff formerly practiced medicine. At the time of the trial he lived part of the time in Mason City and was a man of large interests. With his wife he owned 3,600 acres of land in Cerro Gordo county, other farms in Iowa, considerable land in Canada, and had interests in oil wells in Texas. He raised hogs on a large scale on the Cerro Gordo county farm, in number running into the thousands. He had as man-

ager for that farm J. E. Risden. The first deaths from disease among the hogs were on July 11, 1940, the dead hogs being removed to a rendering works. There was hog cholera in the neighborhood. Dr. Peter Malcolm was called to the ranch in August to look after the hogs, and treated them, and he called Dr. Cady, of Mason City, to come out. After a conference between Dr. Kinney, Dr. Cady, Dr. Malcolm, and Risden, the plaintiff left the matter to Risden, who, according to Dr. Malcolm, directed Dr. Cady to vaccinate the hogs, which he did by double vaccination, there being a total of about 3,500 so treated. It is unnecessary to go into the details of the treatment, but as a result, the petition against Dr. Cady was filed by the plaintiff, charging negligence in the treatment and in the care of the vaccine and virus. Out of the 3,454 hogs vaccinated 1,479 died, and there was a dispute between the plaintiff's agent, Risden, and the defendant, about the payment of Dr. Cady's bill. On the 21st of August 1940, Dr. Cady caused a lien to be filed against the Kinneys for $1,556.86.

The controversy as to the malpractice was terminated by the court's ruling on defendant's motion for a directed verdict against the plaintiff, which was not appealed from and which we may assume has determined the question of liability for malpractice.

On the day that Dr. Kinney filed his petition for damages against Dr. Cady there was a meeting of Dr. Kinney's employees and their wives at one of the houses on the farm. At this meeting labor-and-management troubles were discussed. Prior to this time the dissatisfaction of the employees had resulted in a sit-down strike. The men submitted their complaints, blamed the farm manager for their troubles, and asked that a new manager be appointed. Plaintiff appointed Suby, one of their number, to be foreman, and Risden was later discharged. At this meeting certain employees—Suby, Hugi, Long, Dorsey, Watermiller, Erickson, Coonrod, and Shahan—were present. There was some conversation relative to the treatment the hogs had had, and it is alleged by defendant that Dr. Kinney, in the course of the conversation, said:

"If I had some patients that had diphtheria, smallpox,

and other diseases, and I vaccinated all of them for the same disease, I would be a rotten doctor.''

It is denied by a number of witnesses that this was the exact language used, and it was stated by plaintiff's attorney in his opening statement that plaintiff did make the statement that if he had a lot of patients and some had smallpox, some diphtheria, and some other diseases, he would not believe he was doing the right thing if he treated them all for the same thing. However, the words charged were as heretofore stated. It is further charged by the defendant that the statement was false and defamatory, that it was uttered and understood as a charge of professional negligence and misconduct, and was for the express purpose of injuring the defendant.

The trial occupied considerable time, beginning January 13th and ending January 29, 1941, and it would not be practicable to set out the testimony in detail.

The plaintiff alleges error in various respects but we need not refer to all assignments. We notice first the claimed error of the court in denying permission to plead privilege. During the progress of the trial, on January 20, 1941, plaintiff asked permission to file an amendment as follows:

''Further answering Counts I, II, III, IV and V of defendant's counterclaim, the plaintiff denies that he ever made any statements as alleged in said Counts of said counterclaim. Plaintiff further states that, even had the statements been made by him as alleged by defendant in each, any and every Count of defendant's counterclaim (which plaintiff denies), the circumstances and conditions surrounding the alleged making of the said statements constitute privilege, in that the parties and persons named and referred to by defendant in said Counts of his counterclaim were employees of the plaintiff and on the farms of the plaintiff at the times stated, all of whom were engaged in regular employment of the plaintiff at said times, and that said statements, if made, (which plaintiff denies), were in connection with the plaintiff's business in which said employees were then and there engaged.''

Counts 1, 2, 3, 4, and 5 of the counterclaim, of which count 4 is, in substance, the same as the words charged, were after-

ward, by amendment, withdrawn, and the spoken words heretofore set out substituted. The amendment to the answer the court refused on defendant's objection that:

"There is an attempt to plead upon a denial, a justification or mitigation which is not permissible. Before denial, mitigation or justification can be plead they must admit the speaking of the words, and it tenders no defense whatsoever in the form of the pleading. The defendant, in addition to the objections heretofore dictated into the record, objects to the filing thereof because the said Division 6 of said amendment does not properly plead privilege, qualified privilege or plead any matters which would be in any manner defensive, it being merely a conclusion."

The last paragraph of defendant's objection above set out cannot be sustained as against the pleading objected to. We think that plaintiff's amendment, if sustained by the evidence, would properly present a question of qualified privilege and would be defensive. As to the other part of defendant's objection, in argument defendant states:

"We do not question the statement that if privilege had been properly pleaded and there had been facts justifying the submission of the plea to the jury, the court's denial of the amendment would have been erroneous. The objections to the pleading were that it could not be based upon a denial, and furthermore that it did not constitute a sufficient pleading of facts but was merely a conclusion."

It is plain that if properly pleaded and if sustained by evidence the refusal of the court to submit the question of qualified privilege would be error, since the effect of such privilege would render necessary the specific proof of defendant's damages.

Defendant cites Snyder v. Tribune Co., 161 Iowa 671, 143 N. W. 519; Fleagle v. Downing, 183 Iowa 1300, 168 N. W. 157; Burghardt v. Scioto Sign Co., 191 Iowa 384, 179 N. W. 77; Plecker v. Knottnerus, 201 Iowa 550, 207 N. W. 574; and Salinger v. Cowles, 195 Iowa 873, 191 N. W. 167, none of which we think justifies the refusal of the court on this issue. We

think that it should have been so submitted, and that in view of the testimony of all the witnesses who were present on the occasion when the alleged slanderous matter was uttered, it should have been considered by the jury and the issue which was refused determined by them. The court should also have instructed the jury on the question of qualified privilege. The principal witness by whom defendant sought to sustain his charge—one Shahan—testified as to the reason for the meeting. Others testified as to what was said and done there and the questions that arose as to the sickness of the hogs. There was other testimony that the words were not only not as claimed but that the statements were in response to questions by some of the employees, and that in discussing the sickness of the hogs there was considerable conversation, and questions were asked and answered by both employees and plaintiff. The jury had a right to consider this testimony, on the question of qualified privilege at least. The importance of this is apparent. As said in Ryan v. Wilson, 231 Iowa 33, 52, 300 N. W. 707, 716:

"A complete answer to any claim for damages is found in the fact that since no actual malice is presumed and none was proved, there is no presumption of damages, and the plaintiff offered no proof of damages. Appellant urges that the report was per se libelous. Whether it is or is not per se libelous has nothing to do with the case. Whether a defamation is libelous per se, or per quod, is wholly immaterial and in no way aids a plaintiff, where the communication is either absolutely or qualifiedly privileged, for the privilege renders the defamation innocuous and nonactionable."

See, also, Vial v. Larson, 132 Iowa 208, 109 N. W. 1007.

Defendant asserts that, since the plea of privilege is in the nature of a confession and avoidance, the admission, to be of any avail in such defense, must be as broad as the charge, citing Prewitt v. Wilson, 128 Iowa 198, 205, 103 N. W. 365, 368, and cases therein cited. We do not agree with defendant's argument that the proof showed the statement was not privileged.

Prewitt v. Wilson, supra, was an action to recover damages for libel where qualified privilege was pleaded. The words

of the court therein sufficiently show what the defense was, to which objection is made:

"In other words, they plead and claim privilege for a written publication which is not the publication on which the plaintiff's action is based. It would seem to need no argument to sustain the proposition that a charge of libel in a given writing is not answered by an allegation or admission of the publication of another and different writing which is privileged. The plea of privilege is in the nature of a confession and avoidance, and the admission, to be of any avail in such defense, must be as broad as the charge." (Citing cases.)

This is one of the cases cited in 37 C. J. 46, 47, section 385, as sustaining the text wherein it is said that, "Indeed some cases require that the admission be as broad as the charge." But this is not the universal rule. 33 Am. Jur. 230, section 248. Also 37 C. J. 47, supra.

We have in some cases followed the above rule as indicated in Simons v. Petersberger, 171 Iowa 564, 570, 151 N. W. 392, wherein it is stated that an answer in a libel case using the words "if any" did not raise an issue. Whether the latter statement is necessary to the determination of the case or is mere dictum is not important. In any event, we do not now agree with the rule laid down and do not think that it conforms to our modern system of pleading. There would certainly be no objection if the denial were in one count and the question of qualified privilege in another. A requirement that the plaintiff must without qualification admit using the words alleged in order to sustain his plea of privilege seems illogical and unfair, and such a rule has little reason to sustain it. The opposite party is not taken by surprise. He knows what he will be expected to meet. While it would not be proper to introduce evidence of privilege under a general denial, yet defendant knows, and must know from the pleading, that the claim of qualified privilege will be made.

The matter of sustaining the motion hinges on the question as to whether the pleading was adequate. We think it was. Testimony introduced does not determine. Proof might be different if this were an issue permitted to be passed upon.

It was an inconsistent defense from a general denial, but inconsistent defenses may be stated in the same answer or reply. See section 11159, Code of 1939; and section 11199, Code of 1939, provides: "Inconsistent defenses may be stated in the same answer or reply, * * *." In Baker v. Davis, 212 Iowa 1249, 1251, 235 N. W. 749, 750, the defendant denied the allegations of the petition as to a contract of employment, and also, among other defenses, pleaded payment. In presenting the issues to the jury the district court did not submit the issue of payment but did submit the other issues. In speaking of the instructions, the court says:

"Payment again is impliedly excluded from the issues presented to the jury. Consequently the appellant did not have the benefit of the jury's finding on that subject. While the issue of payment may be inconsistent with some of the other defenses interposed, yet such inconsistency does not preclude the defense. Section 11199, Code, 1927. A defense properly pleaded should be submitted to the jury, providing there is evidence to sustain it." (Citing cases.)

The argument of counsel was that there was no request for instructions, but the court held that such position was not well-founded and that it was the duty of the trial court to submit to the jury issues properly pleaded if they were supported by substantial evidence, and that a request for instructions was not necessary to have the issues presented, which presentation must be made regardless of the request; and the court further held that in this respect there was prejudicial error, and the case was reversed.

In a slander case, Barr v. Hack, 46 Iowa 308, 310, the defendant pleaded inconsistent defenses—a general denial and justification. The court erroneously instructed the jury that the answer admitted the speaking of the words, and this was held to be error under the provisions of the Code permitting inconsistent defenses, and the court said:

"The defendant should have the full benefit of each defense. But this cannot be so if the admissions in one defense, made necessary by the nature of the defense, are to be con-

strued as affecting a different defense which is inconsistent with such admissions."

The court thereupon held that this constituted such error as to require reversal. See, also, 37 C. J. 39, section 366.

In the case of German Sav. Bk. v. Fritz, 135 Iowa 44, 47, 109 N. W. 1008, 1009, the court said, in a case of slander against a bank:

"Defendant sought to rely upon the defense of privilege, and that defense was submitted to the jury. But it is contended for appellant that no such defense was pleaded. In this, counsel is evidently in error. In divisions of defendant's answer the facts relied on as constituting privilege were specifically stated, and it is alleged that the words were spoken without malice and in good faith. It was not necessary for defendant to specifically confess and avoid. The defense of privilege goes to the cause of action itself."

The court then goes on to state that if the words were privileged and not spoken maliciously, the burden of proof was then on the plaintiff to show actual malice if the privileged occasion was proven, citing Vial v. Larson, 132 Iowa 208, 109 N. W. 1007. In Nichols v. Eaton, 110 Iowa 509, 81 N. W. 792, 47 L. R. A. 483, 80 Am. St. Rep. 319, the defendant denied generally and also pleaded the alleged libel was privileged.

The definition of a privileged communication is given in Fleagle v. Goddard, 188 Iowa 1033, 1035, 177 N. W. 51, 52, quoting from Newell on Slander and Libel, 3d Ed., section 492, as follows:

"'A privileged communication is a communication which, under ordinary circumstances, would be defamatory, made to another in pursuance of a duty, political, judicial, social, or personal; so that an action for libel or slander will not lie, though the statement be false, unless, in the two last cases, actual malice be proved in addition.'"

And, quoting further (section 493):

"'* * * The occasion on which the communication was made rebuts the inference of malice prima facie arising from

a statement prejudicial to the character of the plaintiff, and puts upon him the burden of proving that there was malice; in short, that the defendant was actuated by motives of personal spite or ill-will, independent of the occasion on which the communication was made.' "

■ Objection is made to the court's instruction wherein it told the jury that the words alleged to have been uttered by the plaintiff were slander per se. We very much doubt that the words were slanderous per se under the circumstances under which they were spoken, even if so spoken as alleged. We are not inclined to agree with the court in so instructing. However, we need not consider this question at length. The effect of words spoken may be a question of law where there is no dispute as to the circumstances when made. Nichols v. Eaton, 110 Iowa 509, 81 N. W. 792, 47 L. R. A. 483, 80 Am. St. Rep. 319. But in this case we believe the court should have submitted and instructed as to qualified privilege. See Ryan v. Wilson, 231 Iowa 33, 300 N. W. 707, and cases cited.

■ Exception is also taken to the court's submitting to the jury the question of exemplary damages. We are inclined to agree with the plaintiff in this respect. Under the evidence in this case, we do not think that exemplary damages may be allowed solely on the basis of the implication of malice which the law attaches to slander per.se, even assuming that there was such. It is the general rule that there must be actual damages shown before exemplary damages may be allowed. See Ballinger v. Democrat Co., 207 Iowa 576, 223 N. W. 375.

■ Objection is also made to the statement of the issues to the jury. A number of cases are cited. It will be found that most of the instructions of this kind that have met with the disapproval of the court have been those where the pleadings were largely or wholly copied into the instruction and frequently contained matters which were not proper to submit to the jury. In other instances, where the instructions have been concise and contained only the matters in issue within reasonable limits, we have held that there was no error. An examination of the instruction and of the pleading or counterclaim which it sets out, does not convince us that there was any error in this respect. See Reed v. Pape, 226 Iowa 170, 175, 284

N. W. 106, 108; Graham v. Ochsner, 193 Iowa 1196, 188 N. W. 838.

Error is assigned in the giving of instruction No. 7, which begins: "You are instructed that a man intends the natural consequences of his act." We do not understand that to be the law. The rule is that the law only raises a presumption that a man intends the natural consequences of his act. It is erroneous to tell the jury that, as a matter of law, the natural consequences which follow an act are intentional. Perhaps, so far as this instruction alone is concerned, there would be not such error as would require a reversal, but we call attention to it here as stating what we consider the wrong rule.

Exception is taken to the court's action in overruling the plaintiff's motion for a new trial, for the reason that the jury's verdict of $8,500 against plaintiff was excessive, not supported by the evidence, and the result of passion and prejudice. It is difficult to see how there could be a verdict of such proportions under the evidence. This is not a case for reduction of verdict if one should be returned, because we have nothing in the record which would enable us even to approximate the amount, if any, which should be allowed. From the record we gather that there was considerable ill feeling, and it is not hard to see how the jury may have been influenced thereby. The record bears indications that passion and prejudice may have entered into the verdict, but we need go no further into this question since the case must be reversed on other grounds.

Our disposition of the case renders it unnecessary to consider other matters alleged as errors, such as the giving of various instructions which we need not review. Whether or not there should be a retrial of the case so far as the counter-claim is concerned, there is now no necessity of nor advantage in our ruling as to further matters claimed as error.

For reasons stated, the cause should be, and is, reversed.— Reversed.

MILLER, WENNERSTRUM, STIGER, and SAGER, JJ., concur.

GARFIELD, OLIVER, and MITCHELL, JJ., specially concur.

BLISS, C. J., takes no part.

414

GARFIELD, J. (specially concurring)—I concur in a reversal because of the size of the verdict.

The principal ground upon which the majority bases a reversal is the trial court's ruling upon appellee's motion to strike appellant's plea of privilege. I think such ground is untenable and that appellant's amendment which pleaded privilege was properly stricken because it neither expressly nor impliedly admitted the speaking of the words charged. The plea was conditional upon the making of the alleged statements, which *in the same division* was twice denied. Perhaps it would have been a sufficient admission if the plea had contained no denial but merely alleged that the speaking of the words was privileged, etc. This on the theory that each division of an answer must be complete in itself. Section 11117, Code, 1939. Consequently, a failure to deny would amount to an admission. Levitt v. New York L. Ins. Co., 230 Iowa 456, 460, 297 N. W. 888, 890.

The majority cites German Sav. Bk. v. Fritz, 135 Iowa 44, 109 N. W. 1008, and Nichols v. Eaton, 110 Iowa 509, 81 N. W. 792, 47 L. R. A. 483, 80 Am. St. Rep. 319, to sustain the holding that a defendant in a slander case can plead privilege without, *for the purpose of that defense,* admitting, either expressly or at least impliedly, having made the statement claimed to be slanderous. Neither case is authority for such decision and, so far as I can find, there is no prior Iowa case which so holds. Both Prewitt v. Wilson, 128 Iowa 198, 205, 103 N. W. 365, and Simons v. Petersberger, 171 Iowa 564, 570, 151 N. W. 392, mentioned by the majority, sustain the trial court's ruling.

There are several slander or libel cases in Iowa, commencing with McClintock v. Crick, 4 Iowa 453, which hold that a plea of justification (that is, the truth) must admit the words charged in the petition. I think these cases are analogous. One such case is Cain v. Osler, 168 Iowa 59, 150 N. W. 17, Ann. Cas. 1918C, 1126, where there was also an attempted plea in mitigation that the words were spoken in good faith. This is analogous to a plea of privilege.

It is generally recognized in the law of slander that a plea of privilege is one in confession and avoidance. Many courts, including our own, have required that such plea admit, at least

impliedly, the speaking of the words charged. 33 Am. Jur. 230, section 248; 37 C. J. 46, 47, section 385 (citing Prewitt v. Wilson, 128 Iowa 198, 103 N. W. 365). I think we should adhere to this recognized rule.

Furthermore, I think we should squarely pass on the question whether the words spoken are actionable per se, rather than merely to intimate they are not.

I am authorized to say that JUSTICES OLIVER and MITCHELL join in this special concurrence.