**Patricia Kay HIGGINS,**
**Plaintiff–Appellee,**

v.

**GORDON JEWELRY CORPORATION**
**d/b/a Jaccards Jewelry,**
**Defendant–Appellant.**

No. 87–609.

Court of Appeals of Iowa.

Sept. 28, 1988.

Gregory G. Barnsten of Smith, Peterson, Beckman & Willson, Council Bluffs, for defendant-appellant.

Lyle A. Rodenburg of Lyle A. Rodenburg, P.C., Council Bluffs, for plaintiff-appellee.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

The plaintiff applied for a job with the defendant jewelry store in the Council Bluffs mall in August 1984. At that time, she took a variety of tests which revealed that she had been treated by a psychiatrist for past emotional problems and that she had used drugs. Nonetheless, the defendant was hired as a bookkeeper-cashier.

Later, the defendant's regional manager advised the store manager that he wanted the plaintiff fired because of her past medical problems. Her firing was ordered even though she was a model employee.

Finally, in January 1985, after pressure was exerted by his superior, the store manager fired the plaintiff on the fabricated grounds that she failed to lock the cash drawer and refused to sign a "talk-to-slip" stating that she had been "talked to" about locking the cash drawer. There is no dispute that no one in the store ever locked the cash drawer and that the plaintiff was never talked to about it. There is also no dispute that the store manager was told by his superior to "make up a reason" for the plaintiff's discharge.

The plaintiff brought suit against the defendant. The case proceeded to jury trial and resulted in a verdict for the plaintiff in the amount of $186,000. Both defamation and wrongful discharge were submitted. The defendant appeals, contending that: (1) the jury verdict was not supported by the evidence and was excessive; (2) the issue of defamation should not have been submitted to the jury; (3) the district court erred in not submitting the defense of qualified privilege to the jury; (4) inadmissible hearsay was permitted to establish that defendant slandered the plaintiff; (5) the testimony of two expert witnesses was improper and misleading to the jury; and (6) the jury was improperly influenced by the plaintiff's attorney's closing arguments. The defendant's second, fourth and fifth assignments of error are unpersuasive, but we agree with defendant's third contention. Thus, we reverse and remand for a new trial. We need not address defendant's first and sixth assignments.

The main thrust of the defendant's appeal surrounds the defamation charge. In her pleadings, the plaintiff alleged that "defendant's agent, Rich Fleming, grievously and maliciously maligned and slandered plaintiff by relating to coemployees that the plaintiff had attempted suicide and other character assassinations in justification of plaintiff's discharge;...."

The trial record reveals that after the plaintiff's immediate supervisor, Mona Roberge, learned that the plaintiff was going to be discharged she asked the store manager why and on what ground. Mona wanted to know because she was the plaintiff's manager. The store manager at first declined to comment. Mona kept insisting and finally, according to Mona, the store manager stated, "He (store manager) kind of really didn't go into depth, but he said that she had seen a doctor and that she had some emotional problems and had gone through a depression. And we kind of ended it there." This conversation took place in the morning.

Then, after the lunch hour break Mona, in front of the store manager, stated to the plaintiff, "Rick (store manager) says that you have some problems. She (plaintiff) (then) explained basically what the problems were."

When the plaintiff confronted the store manager as to the reason for her discharge, the store manager replied that he was going to have to lie about the reason.

When she pressed the issue, the store manager informed her that it had something to do with her past. The plaintiff responded that the only thing "I can think of about in my past is mental."

The plaintiff further testified that when her friends and other people at her place of employment asked about her past, she explained it to them. She testified that she told friends she was hospitalized because she was depressed; she told Mona that she had attempted suicide in the past.

Her past problems and the reason for her discharge were soon known by the other employees at the store, and evidence at trial reveals that others in adjacent stores also knew. In this respect, the record reveals that a combination of events led to the others learning of plaintiff's circumstances.

The above is set forth to illustrate the several individuals involved in this matter. The evidence in some respects is without significant dispute, and in others, is in sharp conflict. For reasons explained in our Division II, we conclude that the trial court properly submitted to the jury the issue of defamation. We turn now to the defense of qualified privilege.

### I.

The defendant contends that the court erred in failing to submit the defense of qualified privilege to the jury. We agree and accordingly reverse on that ground.

■ The law recognizes that circumstances may arise when a person, in order to protect his own interest or the interest of others, must make statements about another which are libelous. When this happens, the statement is said to be privileged, which means that no liability attaches to its publication. *Vojak v. Jensen*, 161 N.W.2d 100 (Iowa 1968).

■ A privilege may be either absolute, in which event there can be no liability under any circumstances, even if actual malice is shown, or it may be conditioned or qualified, which provides immunity in some, but not all, instances. *Vojak*, 161 N.W.2d at 105. We are not here concerned with absolute privilege, but we are with qualified.

The supreme court, in *Vojak*, adopted the following definition of qualified privilege from 33 Am.Jur. *Libel and Slander*, section 126, page 124 (1941):

A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable and although the duty is not a legal one. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The [qualified] privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within narrow limits.

In the absence of malice an utterance may be qualifiedly privileged, even though it is not true. But the mere color of lawful occasion and pretense of justifiable end cannot shield from liability a person who publishes and circulates defamatory matter. Hence, a publication loses its character as privileged, and is actionable, on proof of actual malice.

*Id.* at 124–25.

Our supreme court in *Robinson* similarly described a (qualified) privileged communication as "one made by a person who has an interest in the subject matter to one who also has an interest in it or stands in such a relation that it is a reasonable duty or a proper one for the person to make the statement." *Robinson v. Home Fire & Marine Ins. Co.*, 242 Iowa 1120, 49 N.W.2d 521 (1951).

Ordinarily, it is for the court to decide whether the privilege is available for the communication in question. *Brown v. First Nat'l Bank of Mason City*, 193 N.W. 2d 547 (Iowa 1972). This position is con-

sistent with the Restatement (Second) of Torts section 619(1), p. 316 (1977). There, under comment a, the following appears:

a. Whether a privilege exists at all is a question for the court. This requires the court to determine whether the circumstances under which the publication was made were such as, under the rules stated in †† 585–598A, and in †† 611 and 612, to make the publication privileged. This is true whether the issue involves the existence of an absolute privilege or of a conditional privilege. If the facts are in dispute, the jury is called upon to consider the evidence and pass upon the issues thus raised. It is for the court, however, to decide whether the facts found by the jury made the publication privileged or to instruct the jury as to what facts they must find in order to hold the publication privileged.

As provided in comment (a) above, there may be circumstances where a factual dispute exists so that the issue of whether the privilege is qualified needs to be submitted to the jury for its consideration. However, we need not pursue that legal theory for the trial court determined as a matter of law that a qualified privilege existed here.

In this respect, we parenthetically note that plaintiff and defendant's counsel also concurred that a qualified privilege existed in this case. In addition, the record reveals that the trial court in its proposed draft of instructions originally intended to give a qualified privilege instruction. It was at that time that the trial court needed to resolve the question of whether the qualified privilege had been so abused that, as a matter of law, it was destroyed. Relying on *Brown v. First Nat'l Bank*, the trial court determined that it had. It is here that we find error.

 There is not much question that a qualified privilege may be lost if it is exceeded or if it has been abused. As stated in 50 Am.Jur.2d *Libel and Slander* section 283, p. 801 (1970), "if a publication is designedly or unnecessarily or negligently excessive, the privilege is thereby lost."

However, as to whether there has been excessive publication depends upon the circumstances as disclosed by the evidence "and is a question of fact for the jury if different inferences reasonably can be drawn from the evidence. . . ." *Id.* In this regard we do not mean to say that the question cannot be decided as a matter of law for that same citation provides, "such questions may be decided as a matter of law if there is no dispute as to the facts and only one conclusion reasonably can be drawn therefrom." *Id.*

As stated in Restatement (Second) of Torts, section 619(2), page 316 (1977):

(2) Subject to the control of the court whenever the issue arises, the jury determines whether the defendant abused a conditional privilege.

**Comment on Subsection (2):**

(b) The question whether the defendant acted for an improper purpose or in an improper manner is material if the publication is conditionally privileged under the rules stated in †† 585–598A. Under these circumstances, the qualified protection thus created is lost if the defendant has utilized the privilege for a purpose other than that for which the privilege was created, or if he otherwise abused the privilege. (See †† 600–605A). These questions are for the jury to determine unless the facts are such that only one conclusion can reasonably be drawn.

As noted, the trial court relied on *Brown v. First Nat'l Bank of Mason City*, 193 N.W.2d 547 (Iowa 1972), when it determined as a matter of law that the privilege was lost. However, the facts in *Brown* are different than the case at bar. In *Brown*, the bank president gave a statement to the local newspaper to the effect that there were bank shortages and that an investigation was taking place to clear all innocent people and that some of the bank employees were not working because their bonds had been withdrawn by the bonding company. *Id.* at 550–51. The court, as a matter of law, determined that the general public did not have a valid interest in the information and concluded that the defense of qualified privilege did not apply. *Id.* at 552. In doing so, the court stated, "The qualified privilege, by its very nature, does not allow

widespread or unrestricted communication." *Id.* at 552.

The communication made by the defendant in *Brown* was not to a person empowered to act, but instead was communicated to the general public and therefore was not privileged. *Id.* Thus, in *Brown*, there was not a qualified privilege at the time of the communication. The communication from its inception was to the general public and not to a person empowered to act as is the case here.

We believe that *Kinney v. Cady*, 232 Iowa 403, 4 N.W.2d 225 (1942), is instructive. In the *Kinney* case, Dr. Kinney (a medical doctor), the owner of a number of hogs, at a meeting consisting of his employees and their wives, and in response to inquiries from his employees concerning treatment given to his hogs, responded: "If I had patients that had diphtheria, smallpox, and other diseases, and I vaccinated all of them for the same disease, I would be a rotten doctor." Dr. Cady, a veterinary surgeon, had prior to those remarks double vaccinated 3500 hogs of Dr. Kinney, of which 1479 had died. The supreme court concluded that the issue of qualified privilege should have been submitted to the jury. As it relates to that decision, however, we are compelled to note that the question of abuse of the privilege does not appear in the case, but it cannot go unnoticed that the alleged slanderous words were spoken in front of Dr. Kinney's employee's wife. The wives under the circumstances of that case were not persons interested in the subject matter of the uttered words.

*Robinson v. Home Fire & Marine Ins. Co.*, 244 Iowa 1084, 59 N.W.2d 776 (1953), casts additional light on the problem at hand. Although resolved on other grounds, the following appears:

> As we pointed out ... a qualified privilege may be abused by excessive publication of the defamatory matter, as by knowingly publishing it to a person to whom its publication is not otherwise privileged.

> As previously stated, plaintiff's petition alleges publication to Davis and others unknown to plaintiff....

> .... It would seem, therefore, that if there is substantial evidence of excessive publication to others than Davis or of actual malice Division IV of the petition should have been submitted to the jury.

> \* \* \* \* \* \*

> As we said ... the mere fact of a communication which is qualifiedly privileged is incidentally brought to the attention of others than the one for whom it was intended does not destroy the privilege. Where however strangers to the privileged occasion are present at the speaker's invitation or desire the privilege is lost. (citations omitted)

*Id.* 59 N.W.2d at 782.

We conclude, under the circumstances here, that different inferences can reasonably be drawn from the evidence as to whether there was excessive publication so as to destroy the privilege. As such, the question is one of fact that should have been submitted to the jury.

This is particularly true in this case for the record reveals that the plaintiff told her fellow employees and others the substance of the very communication that the defendant is alleged to have made to others. Moreover, the other persons who supposedly heard the communication were never identified, and the record, except for a speculative statement by the plaintiff, does not establish who communicated the defamatory statements to others.

Procedurally the plaintiff has the burden of proof on the question of publication of the defamatory matter. Restatement (Second) of Torts † 613 (1977). The defendant, relying on the defense of conditional or qualified privilege, has the burden of proving it. *Id.* at 309. If the defendant sustains this burden, it will prevail unless the plaintiff takes up and sustains the burden of proving that the privilege was abused. *Id.* As our supreme court in *Vinson v. Linn–Mar Community School Dist.*, 360 N.W.2d 108 (Iowa 1984), stated:

Qualified privilege is an affirmative defense that must be pleaded and proved. Ordinarily the availability of the privilege is for the court rather than the jury to decide.... The privilege protects only statements made without actual malice. Thus a publication loses its character as privileged and is actionable on proof of actual malice.... Actual malice requires proof that the statement was made with malice in fact, ill-will or wrongful motive.... *See Vojak*, 161 N.W.2d at 165 ("proof of actual malice destroys the qualified privilege").

*Id.* at 116–17.

In remanding this cause for a new trial, we pass the question of whether the harm done by the defendant is severable. However, as the trial court found, a qualified privilege did as a matter of law exist in this case as to at least a part of the communication. In this respect, we note the following from Restatement (Second) of Torts section 599, p. 256 (1977):

b. The effect of abuse of a conditioned privilege is to make the publisher of the defamation subject to liability for the abuse. If the harm done by the abuse is severable, and can be distinguished from the harm done by a part of the publisher's conduct that would properly be privileged, he is subject to liability only for the excess of harm resulting from his abuse. This is true, for example, under † 604, when the harm resulting from excessive publication, as in the case of communication to an improper person in addition to a proper one, can easily be separated from that which has resulted from the privileged publication. It is also true under † 605, when unprivileged matter is communicated in addition to that which is conditionally privileged. When, however, the harm resulting from the abuse cannot be separated from that which has resulted from the proper exercise of the privilege, the effect of the abuse is to forfeit the conditional privilege and make the publisher subject to liability for the entire harm. This is true, for example, under † 600, as to knowledge or reckless disregard as to knowledge or reckless disregard as to falsity, and under † 603,

as to a publication made for an improper purpose.

## II.

■ Because it may arise on retrial, we address certain of defendant's other contentions. First we find that the trial court did not err in submitting the issue of defamation to the jury. In this respect, we must determine that there was sufficient evidence in the record to support the trial court's decision to submit the issue of defamation to the jury in order to uphold its decision. In evaluating the sufficiency of evidence, we view it in the light most favorable to the judgment. *Briggs Transp. Co., Inc. v. Starr Sales Co.*, 262 N.W.2d 805, 808 (Iowa 1978).

Based on this record, the trial court ruled, and we agree, that there was sufficient and competent evidence to make a prima facie case of defamation for the jury.

## III.

■ Defendant next objects to certain alleged hearsay evidence. Specifically, certain testimony of plaintiff's immediate manager, Ms. Mona Roberge, and testimony from the plaintiff is objected to.

Iowa Rule of Evidence 801(c) defines hearsay as a "statement, other than one made by declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." We find that the issue of the alleged offending testimony was whether slanderous statements were made. The testimony was not offered to prove the truth of the matter asserted, but rather that it was said at all and by whom. Therefore, the testimony objected to was not hearsay.

As the trial court stated when it overruled defendant's motion for a new trial:

Specifically, an admission by a party-opponent is not hearsay. Rule 801(d)(2). Therefore, Ms. Roberge can testify concerning statements made to her during the course of her employment by fellow employees of Defendant. Regarding statements of nonemployees also located at the mall, same were not offered by

Plaintiff to prove the truth of the matter asserted. Rather same was offered for the fact that a statement had been made. Ms. Roberge could then testify as to her personal observation of the knowledge of the other nonemployees. In general see *Vinson v. Linn Marr Comm. School,* 360 N.W.2d 108 (Iowa 1984).

We agree with the trial court's analysis.

Although we have determined that the above testimony is not hearsay, we yet adhere to the following principles of law that appear in *Robinson v. Home Fire and Marine Ins. Co.,* 244 Iowa 1084, 59 N.W.2d 776, 781 (1953):

> Plaintiff offered to prove by the witness Willis that at several times after the trial of her action on the insurance policies [the action referred to is one that preceded this case] he saw an unidentified person in a group of men point to plaintiff at a distance and refer to her as the girl they claimed burned her husband up in the house, also that after Mr. Bannister and Mr. Ahlers came to see Davis at the Firestone plant Davis told fellow workers what the attorneys said, the matter was discussed among the employees and he (Willis) told his wife about it. Defendant objected to the offered testimony as hearsay for which defendant was not responsible and upon other grounds we need not state. The evidence was properly excluded.
>
> We are committed to the rule that evidence of repetition by others of the slander declared upon, without defendant's authority or request, and of rumors and reports of the scandal, is inadmissible for the reasons urged by defendant here. Those who repeat slanderous statements make themselves liable therefor and such repetition cannot be considered a necessity or probable consequence of the original slander. [citations omitted]

*Id.*

### IV.

■ Finally, we find there was no error in admitting the opinion of defendant's doctors as experts called by defendant and cross-examined by the plaintiff. Defendant's counsel proffered the experts whose testimony would relate to the issue of damages.

Dr. Fernandez, a psychiatrist, was first to testify, and he related events about plaintiff that occurred in 1982 on direct examination. Then, defendant's counsel asked about risks in the future intimating, of course, that plaintiff's prior depression made her a bad employee. Then he was asked about her remission in the future. All of this dealt with the doctor's prior treatment and prognosis. Then the doctor was asked if he reviewed "post-discharge from employment" hospital records of plaintiff wherein he was not the treating physician. The medical records were offered under the guise that they were of the type relied upon by doctors even though he didn't rely on them himself.

Then the colloquy commenced by defendant's counsel with the witness, over plaintiff's objection, whether plaintiff's prior disorder would make her "impulsive" and whether plaintiff had other personality traits.

Plaintiff then cross-examined Fernandez on the subject of damages, as defendant's counsel had proffered the witness, in regard to those matters. Defendant interjected the subject of plaintiff's mental condition by psychiatric testimony hoping that prior behavior of plaintiff by implication predicted future behavior. Plaintiff's questioning then of the doctor was entirely relevant.

Opinions expressed by Drs. Fernandez and Dunlap were properly admitted. Both were called by defendant as its witnesses. Once in issue, plaintiff was allowed to cross-examine both. The testimony in question was helpful for a clear understanding of the testimony given on direct. Therefore, pursuant to Article VII of the Iowa Rules of Evidence, the testimony is proper. No reversible error appears here.

REVERSED AND REMANDED FOR NEW TRIAL.