MRS. E. M. BERGER, Appellant, v. THE FREEMAN TRIBUNE
PUBLISHING Co., Appellee.

**Libel:** EVIDENCE IN MITIGATION. It is not permissible to show in
1    justification or mitigation that a libel was copied from another
paper or communicated by a correspondent unless that fact
appears on the face of the publication.

**Proof of malice.** The fact that a publication is libelous *per se*
2    does not prevent proof of malice for the purpose of enhancing
the damages.

**Same.** Where a publication is libelous *per se* malice is presumed
3    and evidence of defendant's innocent motive is inadmissible.

**Submission of the publication.** In an action for libel it was error to
4    take from the consideration of the jury the head lines to the
publication which were printed in large type.

**Justification:** SUBMISSION OF ISSUE. The justification for a libel
5    must be as broad as the charge and when submitted the jury
should be fully instructed in the legal principles applicable
thereto.

**Submission of publication.** In submitting the question of the libel-
6    ous character of a publication the whole article should go to
the jury.

**Libel:** CONSTRUCTION. Where the defamatory matter in an alleged
7    libelous publication is not ambiguous its meaning and charac-
ter are to be determined by the court; it is only when the pub-
lication is capable of more than one construction that the jury
is to determine which meaning was intended.

*Appeal from Hamilton District Court.*— HON. J. H. RICH-
ARD, Judge.

MONDAY, NOVEMBER 19, 1906.

ACTION for libel. Defense, justification, privilege, and
a pleading of facts in mitigation. Trial to a jury. Verdict
and judgment for defendant, and plaintiff appeals.— *Re-
versed.*

*D. C. Chase,* for appellant.

*Boeye & Henderson,* for appellee.

DEEMER, J.— The alleged libel (Exhibit A) reads as follows:

### Her Husband Failed to Die.

Gypsy Fortune Teller Alleged to Have Said E. M. Berger Would Die and Wife Would Wed Rich Man — Hence Divorce is Postponed.

Mrs. E. M. Berger, who yesterday had an information sworn out against her husband, charging him with having threatened her life, withdrew it when the case came on for trial last evening before Justice Knowles. It was withdrawn for the reason that Berger agreed to leave the city and have nothing more to do with his wife. At the last term of the District Court Mrs. Berger filed an application for divorce from her husband, but it is said that through the forecast of a gypsy fortune teller she withdrew the petition. Certain it is that for some reason the petition was withdrawn. It is said the gypsy predicted that Berger would die and therefore Mrs. Berger figured that she would soon be rid of her erring spouse without the expense of getting a divorce.

### Was to Marry a Rich Man.

It is alleged that the prediction given Mrs. Berger by the gypsy was that old and time worn tale about the "rich husband" which never fails to tickle the ears of young and giddy girls but which in the case of more mature persons generally causes a mere smile. It is reported that the gypsy told Mrs. Berger that her present husband would soon die and that she would shortly thereafter be wooed by a wealthy man and that she would wed him in time. The petition for divorce had been filed but Mrs. Berger thinking that if the prediction of the gypsy were to come true the getting of the divorce was needless, went to her attorney and had it withdrawn.

### Berger Failed to Die.

Up to the present time, however, Berger has failed to die, and in fact a few days ago became so lively as to cause

his wife much worry and distress of mind by threatening to
" put her out of the way." He alleged that his wife spent
too much time talking to other men, although it is not al-
leged that he ever charged that these men were .wealthy,
which in case the gypsy's prediction were to come true
would necessarily have been the fact. That as it may, the
couple could not get along well together and things went
from bad to worse. Finally the matter came to a crisis
yesterday when Mrs. Berger had her husband arrested with
the expectation of having him put under bonds to keep the
peace. Before the case came on for trial, however, Berger
told his wife that if she would withdraw her information
he would agree to leave the city and not again molest her.
She agreed and the information was in consequence with-
drawn. Berger had been employed at the Chas. Weise
blacksmith shop while in the city. He left last night and
where he went is not known. It is expected that Mrs. Ber-
ger will soon file in the district court another petition for
divorce. It is believed, however, that her faith in gypsy
fortune tellers is somewhat shaken.

As a justification or in mitigation the defendant was
permitted to prove that the same charge was made in an-
other newspaper published the day preceding the issue of
1. LIBEL: evi-        defendant's paper containing the matter com-
dence in
mitigation.        plained of.   The rule seems to be universal
that, where a libel does not on its face purport to be derived
from another, but is stated as of the writer's own knowledge,
it is wholly inadmissible to show that it was copied from
another newspaper or communicated by a correspondent.
*Marker v. Dunn,* 68 Iowa, 720, and cases cited in 18 Am. &
Eng. Ency. of Law (2d Ed.) 1073.

. II. Evidence was offered by plaintiff to show a subse-
quent repetition of the alleged libel by the defendant. In
ruling upon an objection to this testimony the trial court
2. PROOF OF        said: " Now, in sustaining the objection to
MALICE.        that I understand the rule to be that, where
plaintiff must prove malice, what was said subsequent to
the alleged libel can be introduced, but not where an article

is libelous *per se.*   It is implied in law, and, if that is the only purpose of introducing the article at this point, the objection is good, and that is the reason for the ruling at this time." This was manifestly erroneous. While malice may, and should, be inferred from the publication of an article which is libelous *per se,* this does not prevent the introduction of testimony for the purpose of establishing express malice, thus enhancing the damages to be allowed. *Bailey v. Bailey,* 94 Iowa, 598; *Prime v. Eastwood,* 45 Iowa, 640; *Hinkle v. Davenport,* 38 Iowa, 355, and cases cited.

III. The author of the article was called and was permitted to testify over plaintiff's objections that he had no intention of defaming Mrs. Berger. This was also erroneous. Where an article is libelous *per se,* a presumption of malice arises and it is not proper to receive testimony from defendant to the effect that his motives were pure. *Barr v. Hack,* 46 Iowa, 308; *Curtis v. Mussey,* 6 Gray (Mass.) 261; *McAllister v. Detroit Free Press,* 76 Mich. 338 (43 N. W. 431, 15 Am. St. Rep. 318 and note).

3. SAME.

IV. The trial court took from the jury the head lines to the article which were printed in large type. This was error. *Hayes v. Press Co.,* 127 Pa. 642 (18 Atl. 331, 5 L. R. A. 643, 14 Am. St. Rep. 874), and note to McAllister v. Detroit Free Press, *supra.*

4. SUBMISSION OF THE PUBLICATION.

V. Defendant's plea of justification was submitted to the jury. One of defendant's officers admitted that there were some pleasantries in the article which were not true, and that he forgot to remind his brother of it in his correction, which it seems was attempted. It is well settled that the justification must be as broad as the charge and of the very charge. *Hollenbeck v. Ristine,* 114 Iowa, 358. There was also other evidence tending to show that there was no truth in part of the article. We doubt if the plea of justification should have been submitted at all, but, if submitted, the jury should

5. JUSTIFICATION: submission of issue.

have been properly instructed as to the exact legal principles applicable to such a plea.

VI. The trial court gave the following, among other, instructions: " The defendant admits that it published the article which plaintiff says was libelous. The court will

6. SUBMISSION
OF PUBLICA-
TION.

determine for you that certain parts of the article are not libelous, and you will have to determine only whether or not the remainder of the article is or is not libelous; in other words, the court finds that certain parts of the article are not libelous, and leaves for you to determine whether or not the remainder of the article is or is not libelous. Now, the part of the alleged libelous article which is thus submitted to you to determine as to whether it is or is not libelous is as follows: ' But it is said that, through the forecast of a gypsy fortune teller, she withdrew her petition. Certain it is that for some reason the petition was withdrawn. It is said that the gypsy predicted that Berger would die and therefore Mrs. Berger figured that she would soon be rid of her erring spouse without the expense of getting a divorce. Was to marry rich man. It is alleged that the prediction given Mrs. Berger was that old and time worn tale about the rich husband and which never fails to tickle the ears of young and giddy girls, but which, in the case of more matured persons, causes a mere smile. It is reported that the gypsy told Mrs. Berger that her present husband would soon die, and that she would shortly thereafter be wooed by a wealthy man and that she would wed him in time. The petition for divorce had been filed, but Mrs. Berger, thinking, if the prediction of the gypsy were to come true, the getting of the divorce were needless, went to her attorney and had it withdrawn.' The foregoing part of the alleged libelous article will hereinafter be referred to as the ' article ' or as the ' said alleged article,' or as the ' material part of said alleged libelous article,' and by such words as used, of course, reference will be made to the part which has just been quoted for you. The ques-

tion in this case thus narrows down to this:   Was the fore-
going part of the article referred to as Exhibit A libelous or
not?   That is the specific matter you are to determine in
this case."

This was erroneous.   If the question was for the jury
at all it should have had the whole article before it for con-
struction.   The court should not separate and divide it into
parts but submit the whole, where the matter is for the de-
termination of a jury.   Townshend on Libel, section 282;
*Hunt v. Algar,* 6 C. & P. 245.

In another instruction the court submitted the question
as to the libelous character of the article to the jury for
its determination as to whether or not the language was libel-
7. LIBEL: con-   ous *per se.*   The rule about this matter is well
struction.   settled.   It is this:   Where the defamatory
matter is unambiguous, the question of its meaning and
character is for the court.   But where its meaning is am-
biguous then the question is for a jury.   If the words used
are capable of two meanings, the court should submit to the
jury the question as to which meaning was intended.   In
other words, as we understand the rule, where the language
used is capable of two meanings, the court is to determine
whether the publication is capable of the meaning ascribed
to it by the innuendo and for the jury to say whether such
meaning was truly ascribed to it.   *Hays v. Mather,* 15 Ill.
App. 30; *Thompson v. Grimes,* 5 Ind. 385; *Gibson v. Wil-
liams,* 4 Wend. (N. Y.) 320.   This theory of the case was
not properly presented to the jury.   We are not now called
upon to determine whether or not the article was libelous
*per se,* as that question is not presented.

For the errors pointed out, the judgment must be, and
it is, *reversed.*