HARVEY FLEAGLE, Appellant, v. J. M. GODDARD, Executor, Appellee.

**LIBEL AND SLANDER:** Privilege Attending Affidavit in re Pensioner. An affidavit bearing on the health, mental condition, disposition, and habits of a pensioner of the United States, prepared under the orders and in accordance with the directions of the Federal commissioner of pensions, is at least qualifiedly privileged, and no action for libel will lie thereon, in the absence of evidence by plaintiff that the affiant was actuated by malice.

*Appeal from Cedar District Court.*—JOHN T. MOFFIT, Judge.

APRIL 13, 1920.

ACTION for damages on account of certain alleged slanderous and libelous statements of the defendant concerning the plaintiff. There was a directed verdict for defendant, and plaintiff appeals.—*Affirmed.*

*Sharon, Harrison & McSwiggin,* for appellant.

*J. C. France* and *C. O. Boling,* for appellee.

STEVENS, J.—Plaintiff alleged in his petition that he enlisted in the United States Army in 1898, and served in the Spanish-American War; that, while thus engaged, he incurred disabilities, as the result of a sunstroke, for which he was allowed and paid a pension of $24 per month; that,

as the result of certain oral and written defamatory statements, uttered and published of and concerning the plaintiff by the defendant, his pension was reduced to $12 per month, and he was caused to suffer great mental pain, humiliation, disgrace, etc. He asks judgment in the sum of $25,000.

The writing complained of is an affidavit, prepared by a special examiner of the United States pension office. and signed and verified by defendant, and is set out in full in the abstract. Defendant, among other defenses, pleaded, and now urges in argument, that the publication was absolutely privileged, and that an action for libel cannot be predicated thereon.

No transcript of the evidence was made and filed in the office of the clerk of the district court, and only the deposition of the United States pension commissioner and the testimony of J. J. Horrigan, special agent of the department, are before us. We cannot, therefore, consider or review the alleged oral defamatory statements of the defendant. It appears without conflict in the record, however, that plaintiff's pension was, on or about the 11th day of January, 1916, following an investigation by the pension office, reduced from $24 to $12 per month. Referring to the writing in question, the court, upon a former appeal of this case, *Fleagle v. Downing,* 183 Iowa 1300, said:

"The matters complained of in the second count of the petition, if believed to be true, would lead the mind to the conclusion that the plaintiff, knowing he had suffered no disability while in the service of his country in the Spanish-American War, had fraudulently procured a pension from the government for disabilities not sustained,—clearly charging the plaintiff with defrauding the government, and with obtaining property by false pretenses, a criminal offense which lays the foundation of a civil action, if unfounded, untrue, and maliciously made."

Unless, therefore, appellee's claim of privilege is sustained, plaintiff was entitled to have this count of his petition submitted to the jury. A privileged communication is defined in Newell on Slander and Libel (3d Ed.), Section 492, as follows:

"A privileged communication is a communication which, under ordinary circumstances, would be defamatory, made to another in pursuance of a duty, political, judicial, social, or personal; so that an action for libel or slander will not lie, though the statement be false, unless, in the two last cases, actual malice be proved in addition."

And in the following section, the principle upon which the doctrine rests is stated as follows:

"The great, underlying principle upon which the doctrine of privileged communications rests is public policy. This is more especially the case with absolute privilege, where the interests and the necessities of society require that the time and occasion of the publication or utterance, even though it be both false and malicious, shall protect the defamer from all liability to prosecution for the sake of the public good. It rests upon the same necessity that requires the individual to surrender his personal rights, and to suffer loss for the benefit of the common welfare. Happily for the citizen, this class of privilege is restricted to **narrow and well-defined limits.** Qualified privilege exists **in a much larger number** of cases. It extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character, of imperfect obligation. The occasion on which the communication was made rebuts the inference of malice *prima facie* arising from a statement prejudicial to the character of the plaintiff, and puts upon

him the burden of proving that there was malice; in short, that the defendant was actuated by motives of personal spite or ill-will, independent of the occasion on which the communication was made."

It appears from the deposition of the commissioner of pensions, which was introduced by plaintiff, that, on or about the 25th day of February, 1914, C. F. Simmermaker, mayor of Tipton, wrote the pension office, suggesting an examination of plaintiff for the purpose of ascertaining whether he was entitled to the pension he was receiving, and that, on September 19th, he again wrote the department, to the same effect. On May 7, 1915, J. J. Horrigan, a special examiner of the pension office, acting under written instructions from the department, visited Tipton, for the purpose of making an investigation as to the health, mental condition, and habits of plaintiff. In addition to directing him to obtain medical testimony as to plaintiff's condition, Horrigan was instructed to procure the statement of lay persons, as follows:

"Lay persons who have been in a position to know of his condition during the last year should be questioned as to whether he has performed any manual labor during this time. If so, the nature and the approximate extent of the work done should be ascertained. Has he manifested symptoms of mental impairment? Is he absent-minded, or is his memory impaired? Is he excitable, disputatious, and easily aroused to anger? Is he morbid or melancholic? Does he now do market gardening? If so, does he do the greater part of his work himself? If he hires his work done, is it believed to be necessary, by reason of physical inability to do it himself, or is he indifferent and disinclined to work? Is he generally regarded as being of unsound mind? Does he look after his own business affairs with ordinary success? What are his habits with reference to the use of alcoholics?"

Among other citizens interrogated by Horrigan was defendant, who, according to his testimony, somewhat reluctantly answered numerous questions propounded to him. The witness testified that the affidavit was made up and written by him from the answers to the questions propounded, and covered only the matters referred to in the written instructions from the department.

It is contended by counsel for appellant that the defendant voluntarily signed and swore to the statements complained of; that Horrigan had no authority to compel him to impart information, or make any statements concerning plaintiff; and that the proceedings before him were neither judicial nor quasi judicial in character; and that the publication is neither absolutely nor qualifiedly privileged.

It appears, however, as stated above, that Horrigan was authorized and instructed by the commissioner of pensions to inquire of both medical and lay witnesses concerning the health, apparent mental condition, disposition, and habits of plaintiff; and, if the statements complained of were made by defendant without malice, and with the reasonable belief that same were true, as they were made to the representative of the pension department of the government, in the public interest and for the public good, and in the discharge of his duty as a citizen, they were at least qualifiedly privileged. *Long v. Peters,* 47 Iowa 239; *Rainbow v. Benson,* 71 Iowa 301; *Richardson v. Reps,* 136 Iowa 670; *Cherry v. Des Moines Leader,* 114 Iowa 298; *Gatewood v. Garrett,* 106 Va. 552; *Bodwell v. Osgood,* 3 Pick. (Mass.) 379; *Konkle v. Haven,* 140 Mich. 472; *Kirkpatrick v. Eagle Lodge,* 26 Kans. 384. The doctrine of qualified privilege operates only, however, to destroy the presumption of malice, and to impose upon the plaintiff the burden of proving same. *Morse v. Times-Republican Printing Co.,* 124 Iowa 707; *Cherry v. Des Moines Leader,* supra; *Ott v. Murphy,*

160 Iowa 730; *Nichols v. Eaton,* 110 Iowa 509; *Children v. Shinn,* 168 Iowa 531. The burden of proving malice, therefore, rested upon the plaintiff. Malice may be shown by extrinsic facts and circumstances, or may be inferred from the publication itself. *Nichols v. Eaton,* supra; *Morse v. Printing Co.,* supra.

The motion for a directed verdict was based upon numerous grounds, in addition to the claim of defendant that the publication was privileged, among which was that the evidence wholly failed to show malice; that, on the record as a whole, a verdict for plaintiff could not be sustained, if returned by the jury; that there is nothing in the record in any way connecting the defendant with the complaints made to the pension office concerning plaintiff's pension, or showing that the defendant did not act in good faith in signing the affidavit.

So far as appears upon the record before us, the statements contained in the writing in question may have been true; and we find nothing to indicate that defendant made them without reasonable grounds for believing the same to be true, or that he acted maliciously, unless this appears upon the face of the writing.

The affidavit, as stated, was written by Horrigan, and was based upon answers to questions propounded by him to defendant, in the course of his duty as a special agent of the United States pension office, and for the sole purpose of enabling the department to determine whether plaintiff's pension should be discontinued or reduced; and there is nothing in the language of the affidavit, considered in connection with the occasion upon which same was uttered, to justify an inference of malice. Unless such inference may be drawn therefrom, this issue could not properly have been submitted to the jury. *Cherry v. Des Moines Leader,* supra.

It is not sufficient, to require a reversal of the ruling of

the court below in directing a verdict, that parts of the evidence tending to show facts that would justify the submission of the case to the jury were introduced, but the evidence as a whole, bearing thereon, must be set out in the abstract. *Kitzman v. Kitzman,* 115 Iowa 227.

The record upon which the trial court acted is not before us, and we cannot say that error was committed in the ruling upon the motion to direct a verdict. There appears to have been some confusion or misunderstanding on the part of counsel for appellant as to the grounds upon which the motion was sustained, as shown by the record in the court below, appellant contending that the sole ground upon which the court based its ruling was that the affidavit was absolutely privileged, and that the record is sufficient to show error in the ruling of the court upon the motion.

The record as certified to this court by the clerk shows, however, that the motion was sustained generally. We cannot go behind the record. For the reasons stated, the judgment of the court below is—*Affirmed.*

WEAVER, C. J., LADD and GAYNOR, JJ., concur.