Cy F. VOJAK and Leo D. Campbell, d/b/a
United Roofing Company, Appellants,

v.

M. E. JENSEN, Dighton H. Smith and
Grant Voorhees, d/b/a Architects
Associated, Appellees.

No. 52922.

Supreme Court of Iowa.

Sept. 5, 1968.

Mitchell, Mitchell & Murray, Fort Dodge, for appellants.

Ahlers, Cooney, Dorweiler, Allbee & Haynie, Des Moines, for appellees.

LeGRAND, Justice.

This is the aftermath of a 10-year feud between members of a partnership doing business as United Roofing Company (hereafter called plaintiff) and members of a partnership doing business as Architects Associated (hereafter called defendant)

concerning a school construction job at Manson, Iowa, in 1957, on which defendant was the architect and plaintiff the roofing subcontractor. Prior thereto plaintiff and defendant had for some years enjoyed a pleasant and mutually profitable business relationship. On the Manson building the roof installed by plaintiff was unsatisfactory and defective, although the reasons therefor are to this day bitterly disputed.

In 1963, some six years after the Manson incident, the parties found themselves cast in the same roles on another school construction contract, this time at Humboldt, Iowa. When defendant learned plaintiff was to do the roofing work there, one of its partners wrote two letters which are the subject matter of this suit. One letter was to plaintiff, setting out defendant's refusal to approve plaintiff as a subcontractor on the Humboldt job. The same day a second letter was written to Sande Construction Company, general contractor on the Humboldt job, stating plaintiff would not be approved as a subcontractor. A copy of the letter to plaintiff was enclosed with the letter to Sande Construction Co. A copy of each letter was sent to Clyde Mease, Superintendent of Humboldt Community School District.

We set out the controversial letters in full:

"September 5, 1963

United Roofing Company
P. O. Box 956
Fort Dodge, Iowa

ATTENTION: Leo Campbell

Re: Humboldt High School

M. E. Jensen writing—

"Leo, as a result of yours and Hugo's telephone conversation of yesterday, Smitty, Hugo and myself have visited at some length regarding this matter. In view of the experience which we have had at Manson, I am sure you can understand our not being able to give you approval as the roofing sub-contractor on this project. This is harsh action Leo, but we feel that recent experience demands it.

"In order to prevent future embarrassing situations such as we have here at Humboldt, we are asking Leo, that you in the future refrain from bidding work out of our office. When you can prove to our satisfaction that we may again consider you as a reliable roofing contractor, we shall give all consideration to your again bidding on our work. Your cooperation in this regard with us will be appreciated and will be of benefit to the construction industry and our clients.

Smith—Voorhees—Jensen
ARCHITECTS ASSOCIATED

/s/ M. E. Jensen

M. E. Jensen, A.I.A.

cc: Clyde Mease, Supt. Humboldt Community School District
Sande Construction Company"

(Handwritten postscript) "Leo—It will not be necessary that you come into our office Monday as discussed. Will be happy however to visit with you any time we might get together."

---

"September 5, 1963

Sande Construction Company
P. O. Box 368
Humboldt, Iowa

Attention: Gunnie Sande

Re: Humboldt High School Roofing Contract

M. E. Jensen writing—
"Gunnie, the attached letter to United Roofing Company I believe you will find self-explanatory. Fortunately we have not had too many instances wherein we were forced to take such action as we have here. However, when it is necessary we are prepared to do so and in the interests of General Contractors as well as our clients. We

do not feel that we can afford to run the risk of involving the Humboldt School District and yourself into a situation such as has developed at Manson. We regret the necessity for having to take this action, but can see no alternative.

"We are fully aware that Leo has performed considerable work in the Humboldt area and for the Humboldt School District and that his services have apparently been highly satisfactory. We are also aware that you yourself apparently have some confidence in his organization. We are reluctant to disturb these apparent good relationships but nevertheless cannot disregard our own experience.

"We would consider going along with United Roofing Company on this project if you would give us a letter stating that your firm would assume complete responsibility for this work. Upon receipt of such a letter, Gunnie, we will consider the matter closed and anticipate that you would give the Humboldt School District complete protection as to the satisfactory fulfillment of the roofing contract. We trust that some such arrangement can be worked out to the satisfaction and protection of all parties, we, however, cannot ignore our responsibilities in the matter.

Smith—Voorhees—Jensen
ARCHITECTS ASSOCIATED

/s/ M. E. Jensen

M. E. Jensen, A.I.A.

cc: Clyde Mease"

Shortly thereafter Sande Construction Company cancelled its roofing contract with plaintiff for the Humboldt School project. Plaintiff then brought this action against defendant, alleging the letters were libelous and asking both actual and exemplary damages.

Following a jury trial at which plaintiff was awarded $60,000.00 actual damages and $15,000.00 punitive damages, defendant's motion for a new trial was sustained on these three of the numerous grounds asserted therein: (1) That the verdict was excessive and was influenced by passion and prejudice; (2) That the verdict failed to administer substantial justice; and (3) That the verdict failed to respond to the real merits of the controversy.

Plaintiff now appeals from the order granting a new trial. Defendant cross-appeals, charging various errors in the instructions and in the trial court's rulings on the admission and exclusion of evidence. Before discussing the merits of either appeal, we state briefly some general principles concerning the law of libel.

■ I. Libel is defined as a malicious publication, expressed either in printing or writing, or by signs and pictures, tending to injure the reputation of another or to expose him to public hatred, contempt, or ridicule or to injure him in the maintenance of his business. 53 C.J.S. Libel and Slander § 1, p. 32; 33 Am.Jur. Libel and Slander, section 3, page 38; Plendl v. Beuttler, 253 Iowa 259, 262, 111 N.W.2d 669, 671; Morse v. Times Republican Printing Company, 124 Iowa 707, 712, 100 N.W. 867, 869. See also statutory definition of criminal libel, section 737.1, Code of Iowa, which on occasion has been held applicable to civil actions for damages. Plendl v. Beuttler, supra, and citations.

■■ Certain statements are held to be libelous per se, which means they are actionable in and of themselves without proof of malice, falsity or damage. In actions based on language not libelous per se, all of these elements must be proved by plaintiff before recovery can be had, but when a statement is libelous per se they are presumed from the nature of the language used. Among statements which are libelous per se are those which charge business incompetence or lack of skill in the trade, occupation, profession or office by which one earns his living. 53 C.J.S. Libel and Slander § 1, p. 32; 33 Am.Jur., Libel and Slander, section 3, page 38; Morse v. Times Republican Printing Company, 124 Iowa 707, 713, 100 N.W. 867, 869; Vial v.

Larson, 132 Iowa 208, 209, 109 N.W. 1007; Children v. Shinn, 168 Iowa 531, 544, 150 N.W. 864, 868; Burghardt v. Scioto Sign Company, 191 Iowa 384, 392, 179 N.W. 77, 80; Plendl v. Beuttler, supra.

In the case now before us plaintiff asserts the letters were libelous per se because they charged business incompetence and lack of skill.
Defendant meets this accusation by saying they were written under a qualified privilege. Sometimes one is justified in communicating to others, without liability, defamatory information which would ordinarily entitle the defamed person to maintain an action for damages. The law recognizes certain situations may arise in which a person, in order to protect his own interests or the interests of others, must make statements about another which are indeed libelous. When this happens, the statement is said to be privileged, which simply means no liability attaches to its publication.

■ A privilege may be either absolute, in which event there can be no liability under any circumstances, even if actual malice is shown, or it may be conditional or qualified, which provides immunity in some, but not all, instances. Our discussion is limited to qualified privilege.

Qualified privilege is defined in 33 Am. Jur., Libel and Slander, section 126, page 124, this way:

"A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable and although the duty is not a legal one. * * * The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The [quali-fied] privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within narrow limits.

"In the absence of malice an utterance may be qualifiedly privileged, even though it is not true. * * * But the mere color of lawful occasion and pretense of justifiable end cannot shield from liability a person who publishes and circulates defamatory matter. Hence a publication loses its character as privileged, and is actionable, on proof of actual malice."

■ We have long recognized that qualified privilege renders nonactionable statements which would otherwise subject one to liability. Nichols v. Eaton, 110 Iowa 509, 511, 81 N.W. 792, 793, 47 L.R.A. 483; Robinson v. Home Fire & Marine Insurance Company, 244 Iowa 1084, 1093, 59 N.W.2d 776, 781, 782, and citations. These same authorities support the rule that proof of actual malice destroys the qualified privilege of a publication.

To summarize, then, before applying these principles to the facts now before us: (1) A statement attributing business incompetence or lack of skill to another is libelous per se, from which a presumption of malice, falsity, and damage arises; (2) If made under a qualified privilege, such libelous statement is rendered innocuous and nonactionable; (3) Actual malice nullifies the immunity of a qualified privilege.

■ II. The paramount issue here is whether there must be a new trial. In considering this question we may rely on any ground urged in the motion therefor, even though it is not one upon which the trial court based its order. Smith v. Ullerich, 259 Iowa 797, 803, 145 N.W.2d 1, 5. We mention this because our conclusion a new trial must be granted rests partially on grounds asserted by defendant but overruled by the trial court.

■ The granting of a new trial is largely discretionary, and an order either

granting or refusing one will be set aside only upon a clear showing of abuse of such discretion. 39 Am.Jur., New Trial, section 141, page 148; Rule 344 (f), (3), and (4), Rules of Civil Procedure; Grant v. Thomas, 254 Iowa 581, 584, 118 N.W.2d 545, 547, 548; Coleman v. Brower Construction Company, 254 Iowa 724, 731, 119 N.W.2d 256, 260; Smith v. Ullerich, supra, 259 Iowa at page 807, 145 N.W.2d at page 6; 35 A.L.R.2d, Annotations, 311. We are more reluctant to interfere with the granting of a new trial than with its refusal. Rule 344 (f), (4), R.C.P.; Schneider v. Keokuk Gas Service Company, 250 Iowa 37, 42, 92 N.W.2d 439, 442; Hahn v. Graham, 256 Iowa 713, 722, 128 N.W.2d 886, 891.

Here the trial court found the verdict failed to administer substantial justice and did not respond to the real merits of the controversy. The specific reasons for this conclusion were not set out. Whatever they may have been, we hold the trial court should be affirmed because of error and confusion in the instructions which entitle defendant to a new trial.

We discuss these instructions, which relate to malice, qualified privilege, and burden of proof, more fully later in Division VI. We now merely say the trial court did not abuse its discretion in granting a new trial.

It is unnecessary to discuss the additional ground of the trial court's ruling—whether the verdict was excessive—since our views on that subject would serve no helpful purpose on a retrial of the case.

III. Plaintiff assigns one other error we should pass on. It is claimed the trial court erred in excluding evidence offered by the witness Pedersen to prove loss of profits as an item of damage resulting from the alleged libel. This ruling was based on the ground no proper foundation for its reception had been laid.

■ We believe the trial court was right. At best loss of profits is difficult to establish. While this is no ground for re-

fusing recovery for such damage, it is generally held there must be some basis upon which the amount thereof can be ascertained without resort to speculation and surmise. Natkin and Company v. R. F. Ball Construction Company, 255 Iowa 1156, 1167, 123 N.W.2d 415, 422; Hedrick v. Perry, 10 Cir., 102 F.2d 802, 807; Orkin Exterminating Co. v. Burnett, Iowa, 160 N.W. 2d 427, decided July 16, 1968; Meeker v. Stuart, 188 F.Supp. 272, 276; Gallagher v. Vogel, 157 Neb. 670, 61 N.W.2d 245, 250; South Carolina Finance Corp. v. West Side Finance Co., 236 S.C. 109, 113 S.E.2d 329, 336, 377; National School Studios v. Superior School Photo Service, 40 Wash.2d 263, 242 P.2d 756, 762, 763; Exercycle of Michigan, Inc. v. Waysen, 7 Cir., 341 F.2d 335, 337.

This insistence that plaintiff must first establish a sound foundation upon which the jury may assess his loss of profits with reasonable certainty and without resorting to speculation and surmise is reflected repeatedly both in our decisions and those of other jurisdictions. King, etc. v. Courrier, 241 Iowa 870, 882, 43 N.W.2d 718, 726, 41 A.L.R.2d 467; Morse v. Times Republican Publishing Co., 124 Iowa 707, 726, 100 N.W. 867, 874; Shaw Cleaners & Dyers v. Des Moines Dress Club, 215 Iowa 1130, 1139, 245 N.W. 231, 235, 86 A.L.R. 839; Marr v. Putnam, 196 Or. 1, 246 P.2d 509, 521; Slaughter v. Valley Dale Packing Co., 198 Va. 329, 94 S.E.2d 260, 266; Dun & Bradstreet v. Robinson, 233 Ark. 168, 345 S.W.2d 34, 43; 53 C.J.S. Libel and Slander § 170, pp. 271, 272; 22 Am.Jur.2d, sections 171–172, pages 241–243; section 177, page 252.

■ We agree with the trial court there was no sufficient foundation laid to permit the introduction of evidence to prove loss of profits. The offer went only to the gross amount of certain contracts allegedly lost because of the libel. Although plaintiff's counsel stated he would later show the amount of profit lost, he did not do so except for the unsupported statement

of one witness that plaintiff makes 20 percent profit on its contracts.

There was no other evidence to substantiate this and at best it would be a tenuous foundation upon which to base an award for loss of profits. We need not rely solely on that, however. Even this unsatisfactory evidence of loss of profits came in after the trial court's ruling, and the offer of proof was not renewed. Under these circumstances we have no hesitancy in holding the ruling was correct.

IV. It is still necessary to consider several matters raised by defendant's cross-appeal because they are certain to arise again on retrial of the case.

One of these is defendant's assertion the trial court should have granted its motion for judgment notwithstanding verdict because there was no evidence sufficient to generate a jury question on either actual damages or actual malice. We disagree.

■ Actual malice is defined as ill-will, hatred or desire to do another harm. It may also result from a reckless or wanton disregard of the rights of others. 53 C.J.S. Libel and Slander § 2, p. 35; 33 Am.Jur., Libel and Slander, section 111, page 114; Thompson v. Rake, 140 Iowa 232, 234, 118 N.W. 279, 280, 18 L.R.A.,N.S., 921. Actual malice may be shown by the libelous statement itself or by extrinsic facts and circumstances. Fleagle v. Goddard, 188 Iowa 1033, 1038, 177 N.W. 51, 53; Nichols v. Eaton, 110 Iowa 509, 513, 81 N.W. 792, 794, 47 L.R.A. 483; Morse v. Times Republican Printing Company, 124 Iowa 707, 722, 100 N.W. 867, 872; Ryan v. Wilson, 231 Iowa 33, 52, 300 N.W. 707, 716; Kinney v. Cady, 232 Iowa 403, 412, 4 N.W.2d 225, 229.

Here there was evidence from which the jury might find defendant was seeking to relieve its own failures by falsely accusing plaintiff of incompetence; that defendant unreasonably refused to give consideration to suggestions submitted by plaintiff concerning the cause and possible cure of the roof trouble; that defendant recklessly accused plaintiff of incompetence without making any bona fide investigation to determine the basis for such charges.

■ We hold there was sufficient evidence to justify the submission of the question of actual malice to the jury.

We reach a similar conclusion as to damages. General damages are presumed and special damages need not be shown when a publication is libelous per se.

Defendant insists this rule does not apply because the statements were made under a qualified privilege. This argument has no merit. It ignores the fact that before considering damages at all, the jury was required to find defendant was not entitled to rely upon its qualified privilege.

■ It is quite true defendant plead and proved a qualified privilege. As previously pointed out, however, such a privilege affords no immunity if actual malice is established. Once the jury finds actual malice—as it must have done here—the protective cloak of the privilege is lost. The plaintiff then again is accorded the presumption that damage resulted from the publication. Morse v. Times Republican Company, 124 Iowa 707, 725, 100 N.W. 867, 873; Sunley v. Metropolitan Life Insurance Company, 132 Iowa 123, 128, 109 N.W. 463, 464, 12 L.R.A.,N.S., 91. It was clearly proper to submit the question of general damages to the jury.

While on the subject of damages, we should refer also to objections urged by defendant to the admission of evidence to show special damage by specific loss of business from two contractors and to establish the usual margin of profit in plaintiff's business. The objections extend also to Instruction 9, which submitted the matter of plaintiff's loss of income as an item of allowable damage.

Although Instruction 9 speaks of "loss of income" rather than loss of profits, the trial court undoubtedly used the term as

meaning loss of net income or profits since there is no other claim of loss of income.

A diminution of or decrease in total business may be shown to prove general damages; special damage, if properly plead, must be established by way of specific items of loss. In either case there must be, as previously pointed out, a proper preliminary foundation for the reception of such evidence. 53 C.J.S. Libel and Slander §§ 242, 265, pp. 365, 384.

Whether evidence of lost profits on particular items of business is admissible depends upon the preliminary proof. We have already discussed this in Division III.

It follows, of course, the propriety of Instruction 9 depends upon the prior rulings on the admission of evidence touching this matter.

On retrial evidence to show damage by loss of specific contracts—as opposed to general decrease in business—should be recieved if there is sufficient foundation laid to show both that such loss resulted from the alleged libel and to permit the jury to fix the amount thereof with reasonable certainty.

V. It is next claimed Instruction 8 was fatally defective in its explanation of what must be shown to establish defendant's special defense of truth. Truth under our law is a complete defense to a charge of libel. Children v. Shinn, 168 Iowa 531, 547, 150 N.W. 864, 869; McCuddin v. Dickinson, 230 Iowa 1141, 1142, 300 N.W. 308, 309. Defendant pleaded the truth of its statements and, in fact, much of the evidence in this long trial and quite a bit of the record now before us are devoted to the efforts of the parties to prove, on the one hand, that such charges were false, and, on the other, that they were true.

The court gave the following instruction on truth as a special defense:

"Defendants have alleged as a defense to plaintiff's cause of action that said published statements complained about by plaintiffs are true. Proof of the truth of said statements is a defense to plaintiff's cause of action and, if established, your verdict should be for the defendants.

"The defendants have the burden of proving the truth of said statements by a preponderance of the evidence. *The defendants, in order to meet this burden, must establish the truth of the entire language of said publication and establish it in the sense imputed to it by plaintiffs.* If the defendants fail to make such proof, they have failed to establish truth as a defense.

"It is for you as jurors to determine whether or not said published statement complained about are true." (Emphasis added.)

We hold this instruction was correct. The alleged libel was unambiguous. It contained no innuendo. It required no explanation. Plaintiff pleaded the libelous letters in its petition and set out their meaning. Defendant in its answer met the charge head-on and stated the statements were true. If the language is ambiguous, defendant may deny the meaning attributed to it by plaintiff. He may explain it. He may assert in his own pleadings the meaning which was intended. As we said in Salinger v. Cowles, 195 Iowa 873, 876, 191 N.W. 167, 169, "The answer admits the publication of the article. It admits that said article charged the appellant with doing the very thing the petition alleges it charged him with doing. It avers that the charge as so alleged 'was and is true.' It in no manner seeks to avoid the charge as made by the appellant. There is neither evasion, modification, nor qualification of the charge pleaded.

"We think it quite apparent that the appellee's plea of justification literally complied with the requirement that the plea 'must be as broad as the charge, and of the very charge.' "

That same situation exists here. Defendant accepted plaintiff's allegations which

set out what was charged and stated, by way of defense, that those charges were true.

■ We have frequently held the defense of truth must go to the libel in its entirety and as plaintiff claims it was used. 53 C.J.S. Libel and Slander § 137b, p. 224; Salinger v. Cowles, supra; Morse v. Times Republican Printing Company, 124 Iowa 707, 721, 100 N.W. 867, 872; Berger v. Freeman Tribune Publishing Company, 132 Iowa 290, 295, 109 N.W. 784, 786; Hollenbeck v. Ristine, 105 Iowa 488, 491, 75 N.W. 355, 356; McCudden v. Dickinson, 230 Iowa 1141, 1142, 300 N.W. 308, 309; 33 Am.Jur., Libel and Slander, section 262, page 242; Snyder v. Tribune Company, 161 Iowa 671, 690, 143 N.W. 519, 526; Prewitt v. Wilson, 128 Iowa 198, 205, 103 N.W. 365, 368.

VI. Instructions 4, 5 and 6 were objected to by defendant and were made the basis of its motion for a new trial. We consider them together as did defendant in its brief and argument.

While these three instructions perhaps state correct abstract propositions of law, when considered together in relation to the evidence and circumstances of this case we find them to be confusing, inconsistent and misleading.

Instruction 4 defined both actual malice and malice in law, although plaintiff could only recover upon a showing of actual malice, since the court had correctly held that the statements were made under a qualified privilege. Robinson v. Home Fire and Marine Insurance Company, 244 Iowa 1084, 1093, 59 N.W.2d 776, 782. Instruction 5 told the jury the letters in question were libelous per se, from which the law implied malice "in the absence of privilege", while Instruction 6 told them plaintiff was entitled to recover unless the jury found defendant had established either privilege or truth; but in another instruction the jury had been told the occasion was privileged.

■ To be told in one instruction that the letters *were* privileged and in another

that the defendant must *prove* privilege; to refer in several places to certain legal propositions which were true in the *absence of privilege*, when in this case privilege was *established as a matter of law;* to permit the jury to consider both malice in law and actual malice when the only basis for recovery was actual malice, all this could only confuse and mislead the jury.

The trial court properly instructed the jury the statements were libelous per se and were qualifiedly privileged. 53 C.J.S. Libel and Slander §§ 33, 37, pp. 80, 85; 33 Am.Jur., section 170, page 165, section 126, page 124; Children v. Shinn, 168 Iowa 531, 150 N.W. 864, 869; Berger v. Freeman Tribune Publishing Company, 132 Iowa 290, 295, 109 N.W. 784, 786; Shaw Cleaners & Dyers v. Des Moines Dress Club, 215 Iowa 1130, 1134, 245 N.W. 231, 233, 86 A.L.R. 839. However, the instructions here complained of by defendant cast doubt and uncertainty over the vital questions of qualified privilege and malice.

The jury should have been told unequivocally that the letters were libelous per se; that they were written under a qualified privilege; and that plaintiff could recover only upon proving actual malice on the part of defendant. If malice in law was defined for the purposes of comparison, and to distinguish it from actual malice, it should have been clearly pointed out that malice in law could not be the basis for recovery.

We find these instructions subject to the same criticism we voiced under somewhat similar circumstances in Haas v. Evening Democrat Co., 252 Iowa 517, 523, 107 N.W. 2d 444, 448, 449. As pointed out in Division II hereof, we find this justified the granting of a new trial.

VII. Another issue which must be passed on involves Instruction 7, which dealt with qualified privilege and burden of proof. We set out the pertinent part:

"Before the defendants may have the benefit of the defense of privilege, *defendants must establish by a preponderance of*

*the evidence that their said letters * * * as published went no further than the interests and duties of the defendants reasonably required under all the facts and circumstances upon said occasion.* It is for you to determine from all the evidence *whether defendants have established that said letters as published went no further than the interests and duties of defendants reasonably required. If defendants have not thus established said proposition, you will give no further attention to the defense of privilege. * * * If, as heretofore explained, defendants have established that said letters as published went no further than the interests and duties of defendants reasonably required,* then it is for you to determine whether plaintiffs have established said proposition of actual malice on the part of defendants and if plaintiffs have not thus established said proposition of actual malice, the plaintiffs cannot recover and your verdict will be for defendants." (Emphasis added.)

█ We hold this instruction erroneous because, as shown by the italicized portions, it places on defendant a burden which rightfully belongs to plaintiff. The trial court properly instructed the jury that the letters were libelous per se and were written under a qualified privilege. Once this point is reached, plaintiff must assume the task of defeating the privilege. In other words, plaintiff, not defendant, must prove the qualified privilege, which admittedly existed, may not be relied upon by defendant to avoid liability. 33 Am.Jur., Libel and Slander, section 246, page 24; 53 C.J.S. Libel and Slander §§ 101, 220, pp. 162, 333; Vial v. Larson, 132 Iowa 208, 209, 109 N.W. 1007, 1008; Fleagle v. Goddard, 188 Iowa 1033, 1037, 177 N.W. 51, 53; Robinson v. Home Fire & Marine Insurance Company, 244 Iowa 1084, 1093, 59 N.W.2d 776, 782. Instruction 7 correctly told the jury plaintiff had the burden of proving actual malice, but it then went on to say defendant must establish the letters went no further than the interests and duties of defendant reasonably required.

█ Under some circumstances a qualified privilege may be lost if it is abused by an excessive statement—by saying more than is necessary for the protection of the interest involved. Robinson v. Home Fire & Marine Insurance Co., 244 Iowa 1084, 1095, 59 N.W.2d 776, 782; Haas v. Evening Democrat Company, 252 Iowa 517, 533, 107 N.W.2d 444, 454. However, where, as here, both the parties and subject matter are within the privilege, excessive statement is important only as bearing on the question of actual malice. Nichols v. Eaton, 110 Iowa 509, 81 N.W. 792; 33 Am.Jur., Libel and Slander, section 184, page 176; Boehm v. Western Leather Clothing Co., Mo.App., 161 S.W.2d 710, 718.

In this case we believe Nichols v. Eaton, supra, states the correct rule at page 514 of the Iowa Reports, 81 N.W. 749, " * * We think the better rule is that if the occasion is privileged, and the publication is about a matter in which both parties have an interest, excessive statement is material only as bearing on the question of malice."

Under either theory, however, the burden of proving those matters relied on to defeat the privilege must be borne by plaintiff. It was reversible error to place it on defendant.

We hold this alone would require a new trial, even if no other grounds were shown.

VIII. One other matter remains. Defendant sought unsuccessfully to introduce evidence of a suit based on defective workmanship brought in 1960, which resulted in an award of damages against the plaintiff here.

Obviously this evidence could have no bearing on the main issue here—whether there was or not a libel. Its sole purpose must have been in mitigation of damages.

█ In a libel action it is proper to show plaintiff's general reputation was bad prior to the publication of the defamatory statement. However, ordinarily this may not be done by showing specific acts. 53 C.J.S. Libel and Slander § 267, p. 387.

Here on cross-examination plaintiff had testified it had done "thousands of jobs" and had a good reputation. Damage to reputation was one of the elements for which plaintiff sought recovery. Certainly defendant could show that reputation was already tarnished before the libel in order to minimize the harm suffered by plaintiff. Wallace v. Homestead Company, 117 Iowa 348, 357, 90 N.W. 835, 837, 838; Mowry v. Reinking, 203 Iowa 628, 639, 213 N.W. 274, 280. However, one isolated instance of alleged negligence out of "thousands of jobs" is not proper evidence to establish reputation.

Defendant relies on Barr v. Hack, 46 Iowa 308, and Lehner v. Kelley, 215 Wis. 265, 254 N.W. 634. Neither case supports his position here.

The trial court was right in excluding this evidence. The case is affirmed on plaintiff's appeal, reversed on defendant's appeal, and remanded for new trial.

Affirmed on plaintiff's appeal.

Reversed on cross-appeal.

All Justices concur.