Marlene **SUNTKEN**, Plaintiff–Appellee/Cross–Appellant,

v.

Sue **DEN OUDEN**, Defendant–Appellant,

and

Christian K. Den Ouden, Defendant/Cross–Appellee.

No. 94–1704.

Court of Appeals of Iowa.

March 27, 1996.

Thomas J. Levis and Mark R. Schuling of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellant and cross-appellee.

Luis Herrera of Brewer, Sinclair & Herrera, P.C., West Des Moines, for appellee.

Heard by SACKETT, P.J., HABHAB, J., and SCHLEGEL, Senior Judge, but decided by SACKETT, P.J., HABHAB, CADY, and STREIT, JJ.

SACKETT, Presiding Justice.

Defendant-appellant Sue Den Ouden appeals from judgments for compensatory and punitive damages entered against her for libel and intentional infliction of emotional distress as a result of notations on a series of checks she wrote paying her husband Christian K. Den Ouden's alimony and child support. She contends there is not substantial evidence to support the verdict. We find there is not substantial evidence supporting a finding the alleged libelous statements were published. We find there is not substantial evidence to support a finding of intentional infliction of emotional distress. We reverse and vacate the judgment.

Plaintiff-appellee/cross-appellant Marlene Suntken has cross-appealed contending she should have been awarded compensatory and punitive damages from defendant/cross-appellee Christian K. Den Ouden. We affirm on this issue.

**I. Libel.** Marlene was married to and divorced from Christian K. Den Ouden. Their dissolution decree ordered Christian to pay Marlene monthly sums of $2250 alimony and $4000 child support. Sue works in Christian's medical office as an office manager. She writes Christian's checks, including those for alimony and child support. The claim for libel arises from notations Sue made on checks written to "Friend of Court" for alimony and child support due Marlene, as follows:

(1) A check written April 30, 1993, for $6250 included the following notation, "$4000 child support; $2250 unemployment ex-wife."

(2) A check written May 24, 1993, for $6250 showing, "$4000 child support; $2250 breast implants."

(3) A check written June 20, 1993, for $6250 showing, "$4000 kids; $2250 psycho."

The trial court found these notations libel. The court found the checks were written by Sue. The court further found the statements were communicated to the Friend of Court and exposed Marlene to ridicule and she was damaged. The court ordered $25,000 compensatory damages. The court found Sue admitted she intentionally made the statements intending to injure Marlene and awarded $10,000 in punitive damages.

Sue contends there is not substantial evidence supporting the finding of libel. Libel is defined as a malicious publication, expressed either in printing or writing, or by signs and pictures, tending to injure the reputation of another or to expose him to public hatred, contempt, or ridicule, or to injure him in the maintenance of his business. *Vojak v. Jensen,* 161 N.W.2d 100, 104 (Iowa 1968); *Plendl v. Beuttler,* 253 Iowa 259, 262, 111 N.W.2d 669, 671 (1961); *Morse v. Times–Republican Printing Co.,* 124 Iowa 707, 712–13, 100 N.W. 867, 869 (1904). Certain state-

ments are held to be libelous per se, which means they are actionable in and of themselves without proof of malice, falsity or damage. *Spencer v. Spencer,* 479 N.W.2d 293, 296 (Iowa 1991). In actions based on language not libelous per se, all of these elements must be proved by plaintiff before recovery can be had; but when a statement is libelous per se, they are presumed from the nature of the language used. Among statements which are libelous per se are those which charge business incompetence or lack of skill in the trade, occupation, profession, or office by which one earns his living. *Vojak,* 161 N.W.2d at 104; *see also, Burghardt v. Scioto Sign Co.,* 191 Iowa 384, 392, 179 N.W. 77, 80 (1920); *Children v. Shinn,* 168 Iowa 531, 544, 150 N.W. 864, 868 (1915); *Vial v. Larson,* 132 Iowa 208, 209, 109 N.W. 1007, 1007–08 (1906); *Morse,* 124 Iowa at 713, 100 N.W. at 869.

■ It is for the court to determine if the words have a libelous meaning and for the fact finder to determine if they were so understood. *See Kiner v. Reliance Ins. Co.,* 463 N.W.2d 9, 14 (Iowa 1990).

■ The words on the three checks are not libelous per se. One cannot presume as a matter of law their publication will have a libelous effect. *See id.* Therefore, plaintiff has the burden of proving (1) defendant wrote the statements; (2) the statements are false; (3) defendant made the statements with malice; (4) defendant communicated the statements to someone other than plaintiff; (5) the statements injured the reputation of plaintiff or exposed her to public hatred, contempt, or ridicule; and (6) plaintiff was damaged as a result.

■ Sue claims there is not substantial evidence to prove the statements were communicated to someone other than Marlene and they injured Marlene's reputation or exposed her to public hatred, contempt or ridicule. The checks were written and delivered to the Friend of Court. There is no evidence anyone at the Friend of Court read or saw the alleged libelous statements on the checks. Marlene showed the checks to a friend. The alleged offensive language was excised before the checks were deposited.

■ For there to be libel, there must be publication of the libelous language to someone other than the person defamed. *See Belcher v. Little,* 315 N.W.2d 734, 737 (Iowa 1982); *Royston v. Vander Linden,* 197 Iowa 536, 537, 197 N.W. 435, 436 (1924). Publication is a communication to a third person or persons. *See Royston,* 197 Iowa at 537, 197 N.W. at 436. The fact Marlene may have shown the checks to others does not meet the test for publication.

■ The defamed party has not suffered injury until someone other than himself or herself learns of the defamation. *See Belcher,* 315 N.W.2d at 738. The injured party cannot create his or her own cause of action by communicating the slanderous statements to others unless under strong compulsion to do so. *Id.* What constitutes strong compulsion must of necessity be decided by the finder of fact under the circumstances in each case when substantial evidence of such compulsion is introduced. *Id.*

The challenged words were crossed out by Marlene before depositing them in her bank. We need not decide, therefore, if there was evidence of compulsion. Her showing them to a friend or friends is not publication.

The question is whether evidence showing only that the checks were delivered to the Friend of Court is substantial evidence the statements were communicated to someone other than Marlene and injured Marlene's reputation or exposed her to public hatred, contempt or ridicule. We find it is not. We reverse and vacate the judgment for compensatory and punitive damages for libel.

■ **II. *Intentional Infliction of Emotional Distress.*** Sue next contends there is not substantial evidence to support the trial court's finding of intentional infliction of emotional distress. The trial court found Sue engaged in outrageous conduct when she wrote a fourth check for $6250 on May 23, 1993. The check contained the notation: "$4000 kids; $2250 M.S."

Marlene suffers from multiple sclerosis, frequently referred to by the initials M.S. The trial court found the notation "M.S." was a reference to multiple sclerosis.

Marlene's initials are M.S. Sue contends she intended M.S. to stand for Marlene's initials. The trial court found Sue, in using M.S. as a reference to Marlene's disease, engaged in outrageous conduct. The trial court ordered $35,000 in compensatory and $20,000 in punitive damages against Sue. Sue contends the judgment is not supported by substantial evidence.

■ We examine the evidence in the light most favorable to plaintiff to determine whether there is substantial evidence to support the verdict. *See Vinson v. Linn–Mar Community School Dist.,* 360 N.W.2d 108, 118 (Iowa 1984).

■ The elements of the tort of severe emotional distress are (1) outrageous conduct by the defendant; (2) the defendant's intentional causing, or reckless disregard of the probability of causing emotional distress; (3) the plaintiff suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 800 (Iowa 1984); *see also, Powell v. Khodari–Intergreen Co.,* 334 N.W.2d 127, 129 (Iowa 1983); *Poulsen v. Russell,* 300 N.W.2d 289, 296 (Iowa 1981); *Wambsgans v. Price,* 274 N.W.2d 362, 365–66 (Iowa 1979); *Meyer v. Nottger,* 241 N.W.2d 911, 918 (Iowa 1976); *Amsden v. Grinnell Mut. Reinsurance Co.,* 203 N.W.2d 252, 255 (Iowa 1972); *Randa v. U.S. Homes, Inc.,* 325 N.W.2d 905, 908 (Iowa App.1982).

■ For conduct to be "outrageous" it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harsha,* 346 N.W.2d at 801; *see also, Roalson v. Chaney,* 334 N.W.2d 754, 756 (Iowa 1983). Notwithstanding Marlene's reaction to the alleged misconduct, the conduct must be judged considering all surrounding circumstances. *See Northrup v. Farmland Indus., Inc.,* 372 N.W.2d 193, 198–99 (Iowa 1985).

■ It is not enough defendant acted with an intent which is tortious or even criminal, or that he or she has intended to inflict emotional distress, or even that his or her conduct has been characterized by malice or a degree of aggravation that would entitle plaintiff to punitive damages for another tort. *Vinson,* 360 N.W.2d at 118. Even a finding a defendant engaged in a deliberate campaign to badger and harass a plaintiff does not support a finding of outrageous conduct. *Id.* at 119.

Sue contends she used M.S. for Marlene's initials, not multiple sclerosis from which Marlene suffers. The trial court found this testimony not credible and found the reference to M.S. outrageous. If the language is capable of two meanings, including the one ascribed by the complainant, it is for the jury to say whether such meaning was the one conveyed. *Id.* at 116.

The trial court's findings are binding on us, so we consider the notation to mean multiple sclerosis. Even doing so, there is not substantial evidence to support a finding of intentional infliction of emotional distress. We reverse and vacate the judgment for compensatory and punitive damages for the infliction of emotional distress.

**III. Cross–Appeal for Compensatory Damages.** Marlene has cross-appealed contending the judgment for compensatory damages should have also been granted against defendant Christian Den Ouden. We have found Marlene has failed to introduce substantial evidence in support of her claims. We therefore need not address the issue she has raised on cross-appeal, but affirm the trial court on this issue.

**REVERSED IN PART; AFFIRMED IN PART; AND JUDGMENT VACATED.**

All judges concur, except HABHAB, CADY and STREIT, JJ., who specially concur.

HUITINK, J., takes no part.

HABHAB, Judge (specially concurring).

Although I concur with each division of the majority's opinion, I feel compelled to add the following.

Although bizarre, the facts of this case are simple. Three checks were written by defendant Sue Den Ouden with the payee named

as "Friend of Court—D4084." The three checks set forth at the "for" line those statements which form the basis for this suit. Sue did not refer to plaintiff in any of the checks by name.[1] As it relates to those checks, each was written to satisfy Christian Den Ouden's support obligations to his children and alimony payments to plaintiff Marlene Suntken.

The majority begins its discussion on the defamation claim by correctly finding there was not libel per se in this case. The majority then correctly sets out the requirements for recovery in situations where the alleged defamation is not libel per se, but rather libel per quod. In such situations, plaintiff must prove: (1) defendant wrote the statements; (2) the statements are false; (3) defendant made the statements with malice; (4) defendant communicated the statements to someone other than plaintiff; (5) the statements injured the reputation of plaintiff or exposed her to public hatred, contempt, or ridicule; and (6) plaintiff was damaged as a result. II Iowa Civ. Jury Instruction 2100.3 (1989).

Generally speaking, not all insulting, annoying, or name-calling statements are defamatory.

> *Statements which are merely annoying or embarrassing* or no more than rhetorical hyperbole or a vigorous epithet *are not defamatory.* Similarly, nasty epithets, however vitriolic, are not libelous. *Words that are mere name-calling* or found to be rhetorical hyperbole or are employed only in a loose, figurative sense *have been deemed nonactionable.*

50 Am.Jur.2d *Libel and Slander* 159, at 449 (1995) (emphasis added). It has been further stated:

> The common law has always differentiated sharply between genuinely defamatory communications as opposed to obscenities, vulgarities, insults, epithets, name-calling, and other verbal abuse. No matter how

mean or vulgar, such language is not defamatory. It is not defamatory, for example, to call someone a "bastard," or a "son of a bitch," or an "idiot." No matter how obnoxious, insulting, or tasteless such name-calling, it is regarded as a part of life for which the law of defamation affords no remedy.

Rodney A. Smolla, *Law of Defamation* § 4.03, at 4–12 (1995). The statements made on the checks should not be considered defamatory under the authority stated above.

While plaintiff may be embarrassed and undoubtedly annoyed by the words set forth in the checks, I am unable to conclude such statements exposed her to public hatred, contempt, or ridicule as required under element five where libel per quod is involved, nor can I conclude they injured her reputation.[2]

But even assuming arguendo somehow the words are libelous, there is yet the question of damages. The plaintiff must carry this burden. Since proof of injury to the reputation and feelings without proof of special damages is sufficient to authorize a verdict for a plaintiff when libel per se is involved, to construe actual damages as applying to the special damages required to be shown where libel per se is not involved would in effect eliminate the difference between libel per se and libel per quod. *Jamison v. First Georgia Bank*, 193 Ga.App. 219, 387 S.E.2d 375 (1985).

Here the alleged libelous language is not actionable per se. Such being the case, the plaintiff is not entitled to recover what is known as general damages; the plaintiff is entitled to recover special damages. *Shaw Cleaners & Dyers, Inc. v. Des Moines Dress Club*, 215 Iowa 1130, 1137, 245 N.W. 231, 234 (1932). Turning to section 575 of Restatement (Second) of Torts (1977), I note "special harm" as used in the Restatement "is the loss of something having economic or pecuni-

1. There is a reference on one of the checks to "ex-wife."

2. There is case law to support a finding the use of the word "psycho" is not libelous. When one employee tells another employee that a third employee (the plaintiff) is "crazy," it was found not to be libel. *Kryeski v. Schott Glass Technolo-gies*, 426 Pa.Super. 105, 626 A.2d 595, 601 (1993). A federal court has found that use of the words "paranoid" and "schizophrenic" are not defamatory where there was no proof they were used in reference to an actual psychological condition. *Fram v. Yellow Cab Co.*, 380 F.Supp. 1314, 1329 (W.D.Pa.1974).

ary value." "The limitation has persisted in the requirement that special harm, to serve as the foundation of an action for slander that is not actionable per se, must be 'temporal,' 'material,' pecuniary or economic in character." Restatement (Second) of Torts § 575 cmt b (1977).[3] In addition, the Restatement provides:

> Special harm must result from the conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation. It is, however, immaterial whether the harmful action is taken because the person who takes it believes the defamation, or because he is unwilling to deal or to associate with one whose reputation has been impaired by it. Loss of reputation alone is not enough to make the defamer liable under the rule stated in this Section unless it is reflected in some kind of economic or pecuniary loss. So too, lowered social standing and its purely social consequences are not sufficient. Thus the fact that a slander has caused the person defamed to lose caste in the eyes of his friends and so has deprived him of many pleasant social contacts is not special harm.

*Id.*

I do not believe plaintiff's proof rises to the level of substantial evidence to support the damage element. I agree with the majority this case must be reversed.

CADY and STREIT, JJ., join in this special concurrence.

---

**3.** "One who is liable for either a slander actionable per se or a libel is also liable for any special harm legally caused by the defamatory publication." Restatement (Second) of Torts § 622 (1977).